MICHAEL MURRAY, Respondent, v. THE NEW YORK CENTRAL
RAILROAD COMPANY, Appellants.

CONSTRUCTION OF STATUTES. NEGLIGENCE. RAILROAD COMPANIES. SUB-
MISSION OF CASE TO JURY ON INSUFFICIENT EVIDENCE.

The language of the fifty-sixth section of the general railroad act, as amended
in 1854 (2 R. S. 5th ed., § 56, p. 690), in the following words: "So long
as such fences shall not be made, and when not in good repair, such rail-
road corporation shall be liable for damages, which shall be done by the
agents or engines of such corporation, to cattle, horses, etc., thereon,"
is not to be construed literally, so as to render a railroad corporation
liable for injuries occasioned upon its road, at a time when such fence is
temporarily out of repair, without fault or negligence in any manner
imputable to the company.

Where the legislative intent is manifest, the letter of the statute must,
upon the most familiar rules of construction, yield to the spirit.

For evidence of negligence in keeping railroad fences or gates in repair,
insufficient to justify sending the case to the jury, see opinion of MASON, J.

THIS action was brought to recover damages for killing a
colt of the plaintiff's by running the engine against him
while the colt was upon the track of the defendants' railroad.
The accident occurred one stormy, windy night, in the month
of November, 1858, and the snow was flying so that it was
difficult to see. There is no evidence in the case to show
any negligence on the part of the defendants' employees who
had charge of the train, and the defendants are not at all
liable, upon the evidence in the case, unless the omission to
repair the gate at this farm crossing makes them liable. The
plaintiff had sent the colt to be pastured in a field adjoining
the defendants' road, being part of a farm owned by one Bird,
and occupied by one Scott, under a lease from Bird. Scott
was pasturing the colt for the plaintiff. This farm of Bird's
lay upon both sides of the railroad, the rail passing through
the farm. The 140 acres lying west of the railroad was occu-
pied by Scott. There was a wood lot upon this lot, and Bird
reserved the right to go upon the lot to get wood.

The defendants had constructed proper fences and gates at
the farm crossings, cattle guards, etc. The evidence shows,

that many persons were in the habit of going through this west lot after wood, and that some four days before the killing of this colt, by some means this gate got off its hinges. There was a chain and padlock there with which it could be fastened up, so as to render it secure. One McCall had been drawing wood through this gate for Bird the day before, and came out with his last load about 5 P. M., and he just put the gate in its place with the bottom out into the field; he did not fasten it in any way. There was a strong iron hook to fasten it when shut; he did not so much as fasten this. He says, had he hooked it, it would not have come down; but as it was not hooked when he went in, he left it as he found it. He testified that he saw the colt in the pasture about 9 o'clock in the evening, before it was killed. The plaintiff gave evidence tending to show, that the colt got upon the defendants' railroad through this gate.

There is evidence showing that Scott, who had this colt to pasture, knew of the condition of this gate. He did not notify the defendants, nor is there any direct evidence in the case that the defendants knew this gate was out of repair. The only evidence in the case to charge the defendants with knowledge, is found in the testimony of Scott, who swore, that he had seen those who were at work upon the railroad pass on the track by the gate, since the hinges were off. Whether the gate was then up in its proper place and fastened, he does not say.

All that it required to repair the gate as good as it was before, was a hammer and a few nails to nail on the hinges upon the gate. It was not, probably, five minutes' work to repair it.

Upon these facts the defendants moved to nonsuit the plaintiff, upon the grounds, among others, that the plaintiff was not entitled to recover, because his bailee, Scott, was guilty of negligence in suffering the gate to remain as it was, and in not informing the defendants of its condition, and in permitting the colt to be and remain in the field while the gate was in such condition, and that the gate was not secured as it should have been with the ready means there to fasten

it; and that there is no proof of negligence on the part of the defendants.

*A. P. Laning,* for the appellants.

*Samuel Hand,* for the respondent.

MASON, J. The decision of this case involves the construction to be put upon the 55th and 56th sections of the general railroad act as amended in 1854. The 55th and 56th sections of this act make it the duty of railroads to erect and maintain fences on the sides of their roads, with openings and gates or bars therein, and for the omission to erect and maintain the same, the statute declares that they shall be liable for all damages which shall be done by their agents or engines, to cattle, horses, etc., thereon.

The 56th section employs language which, at first view, seems to favor the construction, that, when the fences are out of repair, the railroad company shall be absolutely liable, without any reference to the question of their negligence in making the repairs. The language of the section in this respect is: " *That, so long as such fences shall not be made, and when not in good repair, such railroad corporation shall be liable for damages which shall be done by the agents or engines of such corporation* to cattle, horses, etc., thereon. (2 R. S. 689, 690, §§ 55, 56, 5th ed.)

This expression, " *when not in good repair,*" can scarcely mean what the literal language would imply. Such a construction would exclude every consideration of negligence from its contemplation, and would render these corporations liable in every conceivable case where their fences were not, at the time of the injury, in proper repair.

A tort feasor in the night-time throws down the fence, and the owner's cattle escape from his fields upon the railroad track the same night, and are killed, and the railroad is held liable. The act of God, manifest in the hurricane, sweeps down miles of the railroad fence, and before it can be put up the farmers' cattle along the line of the road, escape upon the railroad and are killed, and still, the railroad is liable,

under a literal reading of this statute. They would, in short, be liable in all cases where the road is not in repair, whether caused by tempest, by flood, or by the wrongful acts of third persons, although there had been no opportunity to repair. Such a construction of this act should never be indulged.

A stronger exemplification of the maxim, " that the letter killeth, while the spirit keepeth alive," can scarcely be presented, than is afforded in this statute. The duty is intended to be imposed upon these corporations to erect and keep in repair, fences at the sides of their road. This is the object and design of the act, and to enforce this duty, the penalty in damages is imposed, that they shall pay for all cattle, horses, etc., killed or injured by their agents or engines upon their road, no matter how free from all negligence they may have been in causing the injury.

This duty to keep in repair, requires vigilance to ascertain defects, and the energetic application of the means necessary to make the repairs as soon as the defects are ascertained. Every statute is presumed to have a reasonable intendment, and I cannot bring my mind to impute to the legislature so unjust and unreasonable an intent in the statute under consideration as the plaintiff's case invokes. It is unreasonable to suppose the legislature intended to render these corporations liable to so severe penalties where they had performed their whole duty in regard to repairs, and such, I am satisfied, was never the intention of the legislature in making this enactment. The letter of this statute upon the most familiar rules of construction must yield to this spirit where the legislative intent is so manifest. Such is the construction which must be put upon this statute. (*Murich* v. *The New York Central R. R. Co.*, 647; *Pahr* v. *The New York Central R. R. Co.*, 16 N. Y. 476.)

It is proper to remark in this connection, that this clause of the statute relied upon by the plaintiff as a positive enactment, rendering these corporations liable where such fences shall not be in good repair, has the word " gates " left out, while it is used in the former part of the act. This may have been by design, as they are for the use of the farmers

at the farm crossings, and they should reasonably be charged with some care of them while they are constantly using them.

There being no negligence imputable to the defendants in the act of killing this colt, the inquiry remains whether there was sufficient evidence of the defendants' negligence in not repairing this gate to justify the submission of that question to the jury. I do not think there was. The fact that some laborers in the employ of the defendants passed over the railroad at this point after the gate was loosed from the hinges, should not be held as justifying a finding of notice of this defect in the gate to the defendants. I infer that these men were common laborers, and if they did discover the defect, it would not be held a notice to the defendants, but for aught that appears, the gate may have been up and fastened in its proper position at the time they passed. As only four days had elapsed since the gate was out of repair, and as it had generally been kept up during these four days, and in its proper position, and fastened with a chain and padlock, I do not think there was sufficient to send the case to the jury upon the defendants' negligence in not repairing this gate.

There is also strong evidence upon which to charge the plaintiff's bailee (Scott) with negligence, that contributed to this injury, and if so, the plaintiff could not recover. I prefer, however, to place the case upon the former ground of a failure of proof to show negligence in the defendants. The judge should have nonsuited the plaintiff, and it follows that the judgment must be reversed and a new trial granted, costs to abide the event of the action.

Judgment reversed.