In the Matter of the Application of NICHOLAS MEYER, as Executor of MARY R. MEYER, Deceased, Appellant, to Vacate an Order Fixing an Inheritance Tax.

THE COMPTROLLER OF THE STATE OF NEW YORK, Respondent.

Statutory construction — presumption as to intention of legislature in enactment of statute — transfer tax — provision of Tax Law preventing accounting by executor on non-payment cannot be enforced if no moneys of the estate can be collected.

1. It is always presumed, in regard to a statute, that no unjust or unreasonable result was intended by the legislature. Hence, if, viewing a statute from the standpoint of the literal sense of its language, it works such a result, an obscurity of meaning exists, calling for judicial construction, and where a particular application of a statute will occasion great inconvenience or produce inequality or injustice, another and more reasonable interpretation is to be sought.

2. To effect the intention of the legislature the words of a single provision may be enlarged or restrained in their meaning and operation, and language general in expression may be subjected to exceptions through implication.

3. Where, after a hearing upon proper notice to all parties interested, it is adjudged that an executor has been unable to collect the moneys for the payment of a tax imposed under the Transfer Tax Law from the transferred property, through the destruction of the property or obliteration of its value during the process of administration, without fault or delinquency upon his part, the executor is not personally liable for the tax, and the provisions of section 236 of the Tax Law with reference to his final accounting are not applicable.

*Matter of Meyer*, 156 App. Div. 930, affirmed.

(Argued October 20, 1913; decided November 18, 1913.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered May 16, 1913, which affirmed an order of the New York County Surrogate's Court denying a petition to vacate or

modify a transfer tax upon the estate of Mary R. Meyer,
deceased.

The facts, so far as material, are stated in the opinion.

*William G. Cooke* and *Howard O. Wood* for appel-
lant. If there has been no transfer, no right of succes-
sion exists or can exist; and there is nothing to tax.
(*Matter of Wolfe*, 89 App. Div. 349; 179 N. Y. 599;
*Matter of Cook*, 187 N. Y. 253; *Matter of Tracy*, 179
N. Y. 501.) The surrogate had ample power to grant the
application. (*Morgan v. Cowie*, 49 App. Div. 612; *Mat-
ter of Lowry*, 89 App. Div. 226; *Roderigas v. E. R. S.
Inst.*, 63 N. Y. 464; *Miller v. Brinkerhoof*, 4 Den. 119;
*Staples v. Fairchild*, 3 N. Y. 41; Freeman on Judg-
ments, § 98.) The refusal to grant the relief prayed for
perpetuates the executorial office and imposes an intoler-
able burden on the petitioner, appellant, without fault on
his part. (*Matter of Strong*, 117 App. Div. 796; *Matter
of Bushnell*, 73 App. Div. 325; 172 N. Y. 649.)

*Effingham N. Dodge* and *Thomas E. Rush* for respond-
ent. The court has no power to modify a decree of
appraisal of real property merely on the ground that it
subsequently sells for a less amount at auction. (*Matter
of Lowry*, 89 App. Div. 226.) A transfer tax order
based upon a valuation in an executor's affidavit is a
solemn decree of a court of record and should not be set
aside on the ground that its valuation was largely
excessive. (*Matter of Barnum*, 129 App. Div. 418.) The
time to appeal having expired, the order fixing tax could
not be vacated or modified. (*Matter of Wallace*, 28 Misc.
Rep. 603; *Matter of Schermerhorn*, 38 App. Div. 350.)

COLLIN, J. The estate of the testatrix consisted of per-
sonal property of an inventoried value less than the
expenses of administration, namely, $153.25, and an one-
half interest in the equity of redemption in certain mort-
gaged real estate, which interest in the transfer tax pro-

ceeding was on December 31, 1909, appraised at about $8,000. On July 13, 1911, the Surrogate's Court fixed the transfer tax on certain legacies at $297.08. The real estate was sold September 25, 1912, under the judgment in the action to foreclose the mortgage upon it, for the sum due and unpaid upon the mortgage. The executor has not at any time, therefore, had any money or property with or from which he could pay any of the legacies or the transfer tax. The Tax Law (Cons. Laws, ch. 60), section 236, provides: "No executor, administrator or trustee shall be entitled to a final accounting of an estate in settlement of which a tax is due under the provisions of this article unless he shall produce a receipt" duly issued for the payment of the tax.

The petition alleges as the sole ground for vacating the tax that the appraisal in the transfer tax proceeding was grossly inaccurate, that, in fact, there was at that time, within the statutory provisions relating to the transfer tax, no transferable property and consequently no transfer to be taxed. The petition was justly and properly denied under the principles stated in *Matter of Lowry* (89 App. Div. 226) and *Matter of White* (208 N. Y. 64), and the order appealed from should be affirmed.

The provision of section 236 of the Tax Law above quoted is not applicable, however, to the final accounting of the estate in question under the facts presented in the present record. The situation under our consideration is: The appraisal of the estate honestly and legally made and the nature of the bequests required that the transfer tax be fixed at $297.08. It came to pass, within the administration of the estate, without fault or delinquency upon the part of the executor, that the estate yielded a value less than the expenses of its administration. Therefore, the executor did not receive or acquire any money or property usable for the payment of the transfer tax. If he is not entitled to a final accounting and discharge from his office unless he shall produce a receipt for the payment of

the transfer tax, he must pay it from his individual moneys or property although he has completely and honestly fulfilled the duties of his executorship.. We think the legislature did not intend or enact such result. It is true that the language of the statute thus declares and seems too plain to call for judicial construction, if we look to that alone. It is a familiar rule that it is not the province of the courts to supervise or revise legislation and a law plain and certain in its meaning declares itself and is insusceptible of interpretation. It is as binding upon a court as upon every citizen. There must be some uncertainty of sense, else the natural and ordinary meaning of its words must prevail. Uncertainty of sense, however, does not spring alone from uncertainty of expression. The legislative intention, if expressed, is the law itself. It is always presumed, in regard to a statute, that no unjust or unreasonable result was intended by the legislature. Hence, if viewing a statute from the standpoint of the literal sense of its language, it works such a result, an obscurity of meaning exists, calling for judicial construction. Where a particular application of a statute in accordance with its apparent intention will occasion great inconvenience or produce inequality or injustice, another and more reasonable interpretation is to be sought. (*Holy Trinity Church* v. *United States*, 143 U. S. 457; *Murray* v. *N. Y. C. R. R. Co.*, 4 Keyes, 274; *People ex rel. Wood* v. *Lacombe*, 99 N. Y. 43; *Murray* v. *Gibson*, 15 How. [U. S.] 421; *State ex rel. Heiden* v. *Ryan*, 99 Wis. 123.) The courts must in that event look to the act as a whole, to the subject with which it deals, to the reason and spirit of the enactment, and thereby determine the true legislative intention and purpose; and if such purpose is reasonably within the scope of the language used, it must be taken to be a part of the statute the same as if it were plainly expressed. To effect the intention of the legislature the words of a single provision may be enlarged or restrained in their meaning

and operation, and language general in expression may be subjected to exceptions through implication.

There is neither reason nor justice in a requirement that the executor here should pay with his individual moneys the transfer tax. We cannot impute to the legislature an intent so harsh and unjustifiable. The study of those provisions of the Tax Law relating to the transfer tax convinces us that the legislative intent was to secure the payment of the tax, which is in the nature of an excise on the right to and method of transfer, from the transferred estate, through the hands of the executor or administrator who is made, in a sense, the collector for the state. Under them the tax is, speaking generally, due and payable at the time of the transfer and is to be paid by the executor, administrator or trustee. (Section 222.) Elaborate and comprehensive means and methods are provided through which the executor or other payer shall secure and actually get from the estate subject to succession and the tax the moneys with which to pay it, and it remains a lien upon the property transferred until paid, and the person to whom the property is so transferred, and the executors, administrators and trustees of every estate so transferred are personally liable for such tax until its payment. (Section 224.) Every executor, administrator or trustee is required to take from the state comptroller or a county treasurer, as the case may be, duplicate receipts for the payment of the tax (section 222), and is not entitled to a final accounting of an estate in settlement of which a tax is due unless he shall produce the receipt. (Section 236.) An obvious contemplation and intention, expressed by the provisions, is that the money to be used by the executor, administrator or trustee in the payment of the tax, and which through the payment is to produce and give him possession of the receipt, should be collected by him from the transferred property. When its collection has been impossible, the taking and production of the receipt is impossible, within

the intent of the provisions, and the provision barring him from a final accounting is inapplicable. A case in which, after a hearing upon proper notice to all parties interested, it is adjudged that an executor, administrator or trustee has been unable to get or collect the moneys for the payment of the tax from the transferred property through the destruction of the property or obliteration of its value during the process of administration, without fault or delinquency upon his part, is excepted from the general provision through implication.

It is clear, we think, under the reasoning of this opinion that the executor is not personally liable for the tax. Apprehension that he is so liable is based upon the provision: "Every such tax shall be and remain a lien upon the property transferred until paid and the person to whom the property is so transferred, and the executors, administrators and trustees of every estate so transferred shall be personally liable for such tax until its payment." (Section 224.) It is true that the test by which the tax is to be measured is the value of the interest or property transferred at the time of the death of the testatrix. (*Matter of White*, 208 N. Y. 64.) The property disposed of through or under the contracts of the deceased or to enable the executor or administrator to pay the transfer tax or the decedent's debts is not a part of the interest or property transferred within the meaning of such provision and is free of the tax and its lien. In this case, under the facts as presented, the value of the interest or property, the transfer of which was taxed, has vanished during the administration and the executor has been unable to get from the estate moneys for the payment of the tax. The legislature did not impose a personal liability under such conditions.

The order should be affirmed, without costs.

CULLEN, Ch. J., GRAY, CUDDEBACK, HOGAN and MILLER, JJ., concur; WERNER, J., absent.

Order affirmed.