TRUMAN S. MERSEREAU, as Chairman of WESTCHESTER CITIZENS COMMITTEE, Taxpayers, Plaintiff, *v.* THE COUNTY OF WESTCHESTER and Others, Defendants.

Supreme Court, Westchester County, April 13, 1942.

*Pauline M. Horne,* for the plaintiff.

*William A. Davidson, County Attorney [Frank J. Claydon, Assistant County Attorney,* of counsel], for the defendants.

DAVIS, J. The county of Westchester, with the assistance of the Federal government, is about to construct an airport on what is commonly known as the " Rye Lake Site." The land is to be acquired by the county at a cost of $275,750; the government is to contribute, outright, $1,900,000 for construction. The plaintiff in his representative capacity seeks by this action an injunction to restrain the county authorities.

All doubt as to the necessity of building an airport, were that at issue here, has been resolved by the plaintiff. He called an expert witness who testified, without contradiction, that there is an urgent necessity for the immediate construction of a civilian airport in this county at a cost of not less than $2,666,666. To

this may be added that prompt action was taken to create an airport following the tragedy of December 7, 1941, and an imperative request from the Federal authorities that the land be immediately procured. As to the location of the site — that is for the county authorities — not for the court in this present action.

That the county possesses general authority to acquire an airport is beyond dispute. The right to do so is expressly conferred by section 350 of the General Municipal Law. In *Hesse* v. *Rath* (249 N. Y. 436) it was held that an airport or landing field serves both a public and municipal purpose. The warning sounded by Chief Judge CARDOZO in that case has special significance today: " Aviation is today an established method of transportation. The future, even the near future, will make it still more general. The city that is without the foresight to build the ports for the new traffic may soon be left behind in the race of competition. Chalcedon was called the city of the blind, because its founders rejected the nobler site of Byzantium lying at their feet. The need for vision of the future in the governance of cities has not lessened with the years. The dweller within the gates, even more than the stranger from afar, will pay the price of blindness."

It is urged, however, that the Westchester County Charter (Laws of 1937, chap. 617) prohibits the project unless approved by referendum. Section 131 of the charter provides that " Whenever any proposed county bond issue is intended to finance in whole or in part any single project, work, or object, the total cost of which shall exceed one million dollars, the question of such issue shall be submitted at a general or special election in the county, and it shall be authorized only if a majority of the votes cast on such question shall be in favor of such issue."

Here the county's investment will be much less than $1,000,000, but the Federal government's contribution will be far in excess of that sum. The total cost of the project, if that term is to be taken literally, will exceed $1,000,000. The apparent purpose of the charter provision, however, is to prevent the expenditure of county funds in excess of the sum named without the consent of the taxpayers of the county. It could not have been intended to cover a situation where the county's contribution is well within the limitation and the remaining funds are contributed by an outside agency.

If the plaintiff's interpretation were correct, the county could not make even the most trifling contribution toward the cost of a $1,000,000 project without a referendum. Such a result would be absurd, and where a literal interpretation of a statute leads to absurdity the spirit and intention of the law should prevail. (*Matter of Meyer*, 209 N. Y. 386; *Surace* v. *Danna*, 248 id. 18.)

In my opinion the term " total cost," as used in the charter, means the total cost to the county. As so construed, section 131 does not apply to the present project.

Plaintiff's contention that the project was not authorized because it was not included in the county budget is without merit. Section 84 of the charter provides for an amendment of the budget upon receipt of a written recommendation from the county executive, concurred in by the planning commission, and approved by a two-thirds vote of the board of supervisors. The evidence is conclusive that these conditions were fulfilled and that the budget was duly amended on December 20, 1941.

The defendants are entitled to judgment dismissing the complaint, without costs.