Per Curiam.

The appellant-commissioner’s revocation of petitioner-respondent’s license to operate an automobile and suspension of his certificate of automobile registration were made in consequence of his conviction in the State of Vermont of an offense which consisted of operating a motor vehicle while under the influence of intoxicating liquor. In so doing the commissioner acted under the provisions of paragraph '(b) of subdivision 2 of section 71 of the Vehicle and Traffic Law. The Vermont conviction occurred on June 1, 1946. At no time prior thereto did the Vermont magistrate inform the petitioner as to what would or might be the effect of such a conviction in compliance with the requirements of section 335-a of the New York Code of Criminal Procedure which provides as follows: “ The magistrate, after the arrest of a person charged with a violation of the vehicle and traffic law, and before accepting a plea, must inform the defendant at the time of his arraignment that upon conviction, not only will he be liable to a penalty, but that, in addition, his license to drive a motor vehicle or motor cycle, or in the case of an owner, the certificate of registration of his motor vehicle or motor cycle, may or must be suspended or revoked in accordance with the provisions of law governing the charge involved, and must expressly inform the defendant that a plea of guilty is equivalent to a conviction after trial.”
The latter part of subdivision 6 of section 71 of the Vehicle and Traffic Law, added by chapter 677 of the Laws of 1940, disarms “ a judgment of conviction ” as a cause for “ suspension or revocation of a license or certificate of registration ” where there was a failure of compliance with the aforesaid Code provision. Thus the question is whether the omission of the Vermont magistrate’s compliance -with the aforesaid requirement of our Code disarmed petitioner’s conviction as a cause for the revocation of his license and a suspension of his certificate of automobile registration.
We do not consider that the aforesaid 1940 enactment was intended to apply only to a conviction in this State. It does not so state. It was added as a separate and complete enactment,. It was designed to remedy situations productive of undue hardship and which' were as capable of arising without the State as within. While a noncompliance with the procedural requirement of our Code provision was employed as the remedial measure, *725 its non extraterritorial effect does not, in our opinion, limit it to convictions obtained here. A consideration of the “ reason and spirit ” of the 1940 enactment makes plain that its purpose was to save the citizen from the forfeiture of his licensed privileges in the absence of prior notice being given to him that such might follow as a consequence of his conviction of certain named offenses. We believe it was designed to achieve such purpose even where the end result of another State’s procedure was made to operate on rights of a citizen here; that, as to a conviction “ outside this state ”, it meant that the citizen was not to thereby suffer the forfeitures unless the foreign magistrate informed him of such consequence in a way and manner substantially conformable to the requirement here. Such a construction of the 1940 enactment is in harmony with its purpose, and admits, we think, of a liberal or enlarged meaning of its provision as to a compliance with our procedural requirements. (Matter of Meyer, 209 N. Y. 386, 389.) A contrary construction would result, at times, in the forfeiture of valuable rights as dependent upon the chance of forum location — a bad result which indicates a wrong interpretation. Having thus ascertained the purpose of the enactment, we may presume an intention to avoid inequality (Matter of Meyer, supra) and that the Legislature intended to do justice. (People ex rel. Beaman v. Feitner, 168 N. Y. 360, 366.)
The order should be affirmed, with costs.
Hill, P. J., Heeferhab, Brewster, Foster and Bussell, JJ., concur.
Order affirmed, with $25 costs.