Hamm, J.
This proceeding is brought under' article 78 of the Civil Practice Act to review a decision of the Commissioner of Education.
The Central School District in which the petitioners are voters held a meeting on July 13, 1954. At this meeting a budget was duly adopted. There was a shortage of classrooms. The budget adopted contained an item of $1,000 for rental of an American Legion hall.
On August 12, 1954, necessary consents to rent the American Legion hall had not been obtained from all necessary parties. On that date the board determined that rental quarters were not available. The school year was required to begin September 7. The board decided to commence remodeling immediately of a farmhouse located on land owned by the school district and not inconveniently near a site on the district’s land on which a new school is to be erected. To have called a special meeting would have entailed a minimum delay of twenty-two days prior to commencement of alterations (Education Law, § 2004). The board proceeded at once to make and complete the alterations so that classroom facilities would be available on the required opening day of school.
An appeal was taken by the present petitioners. The Commissioner of Education dismissed the appeal.
It is provided in section 1716 of the Education Law: “ It shall be the duty of the board of education of each district to present at the annual meeting a detailed statement in writing of the amount of money which will be required for the ensuing year for school purposes, exclusive of the public moneys, specifying the several purposes and the amount for each. This section shall not be construed to prevent the board from presenting such statement at a special meeting called for the purpose, nor from presenting a supplementary and amended statement or estimate at any time.”
The budget submitted and adopted contained no provision for remodeling. However, among various provisions of the Education Law the commissioner found authority for his decision in sections 2023 and 2024, which state:
“ § 2023. Levy of tax for certain purposes without vote.
If the qualified voters shall neglect or refuse to vote the sum estimated necessary for teachers’ salaries, after applying thereto the public school moneys, and other moneys received or to be received for that purpose, or if they shall neglect or refuse to vote the sum estimated necessary for ordinary contingent expenses, the sole trustee, board of trustees, or board *494 of education may' levy a tax for the same, in like manner as if the same had been voted by the qualified voters. ’ ’
‘ ‘ § 2024. Reference to commissioner of education.
If any question shall arise as to what are ordinary contingent expenses the same may be referred to the commissioner of education, by a statement in writing, signed by one or more of each of the opposing parties upon the question, and the decision of the commissioner shall be conclusive.”
The issue whether the expenditures made by reason of the emergency were ordinary contingent expenses first arose before the commissioner on the appeal. In the circumstances created by the emergency he was justified in making a determination under section 2024 that they were such expenses unless section 2023 must receive a rigorously literal interpretation.
A literal construction of section 2023 would require that no item could be regarded as an ordinary contingent expense unless it was included in the budget as a condition to refusal or neglect. Under such a construction, if the qualified voters voted against an item or if they neglected to vote for an item by voting, for instance, viva voce rather than pursuant to the statutory requirement of ayes and noes, only then and not otherwise could the question arise whether the refused or neglected item was an ordinary contingent expense. As a consequence, the board, without a minimum delay of twenty-two days for calling a special meeting, would be left powerless to correct an unforseeable fire hazard for which no appropriation was made in the budget or to rent urgently needed premises for more than the amount estimated in the budget even though the underestimate was made with due care and in good faith. It seems that the commissioner’s interpretation of the law must coincide with the ultimate view of the courts and that it is not material that reasonable men might reasonably entertain the commissioner’s view (Matter of Ross v. Wilson, 308 N. Y. 605); but I think that a wooden construction that would exclude all but specific budget items as contingent expenses was neither the legislative intent nor the end to be served by the statute as viewed by the judges.
“ It is always presumed, in regard to a statute, ’ we have said (Matter of Meyer, 209 N. Y. 386, 389), ‘ that no unjust or unreasonable result was intended by the legislature.’ And, where adherence to the statute’s letter produces such a result, it is settled that To effect the intention of the legislature the words of a single provision may be enlarged or restrained in their meaning an$ operation, and language general in expres *495 sion may be subjected to exceptions through implication. ’ (209 N. Y., at pp. 389-390; see Surace v. Danna, 248 N. Y. 18, 21; People v. Santoro, 229 N. Y. 277, 281-282.) ” (Matter of United Press Assns. v. Valente, 308 N. Y. 71, 83-84.)
The petitioners raise an additional objection. The cost of alterations exceeded $3,500. The petitioners object that there was no submission of formal plans and specifications prepared by a licensed engineer or architect. Section 408 of the Education Law provides:
“ 1. No schoolhouse shall hereafter be erected, repaired, enlarged or remodeled in any school district except in a city school district in a city having seventy thousand inhabitants or more, at an expense which shall exceed ten thousand dollars in the case of a city school district the territory of which is not enlarged by the formation of a central school district and thirty-five hundred dollars in the case of any other school district, until the plans and specifications thereof shall have been submitted to the commissioner of education and his approval endorsed thereon. Such plans and specifications shall show in detail the ventilation, heating and lighting of such buildings.
“ 2. The commissioner of education shall not approve the plans for the erection of any school building or addition thereto or remodeling thereof unless the same shall provide for heating, ventilation, lighting, sanitation and health, fire and accident protection adequate to maintain healthful, safe and comfortable conditions therein.”
In the necessity for celerity in providing shelter for the pupils the principal of the school prepared plans as a work of supererogation. The construction was carried on in conjunction with a representative of the Department of Education. His recommendations were followed. The building, as remodeled in accordance with the plans and recommendations, has been approved by the Department of Education. In view of the commissioner’s decision it must be assumed that the plans were adequate and that the school building as erected does not lack any requirement specified in section 408 for the health and safety of the children. No proof has been submitted to the contrary. If there was any such lack the petitioners could easily have learned the facts; the building stands for inspection. I think that the statute has been complied with in all essential respects.
The petition is dismissed on the merits.