John P. Cohalan, Jr., J.
This is an article 78 proceeding in the nature of a writ of prohibition.
The issue here presented for decision concerns the power of the Board of Education of Union Free School District No. 12 (hereafter Board) of Brentwood, Suffolk County, New York, to hire facilities of classroom nature in a declared overcrowding emergency without first obtaining the approval of the qualified voters at an annual or special district meeting; and to pay for the items out of general funds.
The population of the school district had mushroomed so rapidly that classes were being held in the cafeterias of two schools and in the music room of one of the two. To meet the situation and presumably to give itself breathing space within which to propose, plan, appropriate money for and erect new buildings, the Board availed itself of the provisions of subdivision 7 of section 1709 of the Education Law. Pursuant to a resolution duly adopted, it entered into a three-year contract *945 with its corespondent, C.I.T. Educational Buildings, Inc. (hereafter C.I.T.), .by Avhich it Avas provided with and is currently using facilities known as relocatable buildings.
The introductory statement of section 1709 (PoAvers and duties of boards of education) reads:
‘ ‘ The said board of education of every union free school district shall have power, and it shall be its duty: * # *
“7. To hire rooms in which to maintain and conduct schools when the rooms in the schoolhouses are overcrowded * * * and to equip and furnish such rooms in a suitable manner for conducting schools therein.” (Emphasis supplied.)
Subdivision 33 of section 1709 (added by L. 1956, eh. 256, § 2) gives broad powers to the Board in that it is “ 33. To have in all respects the superintendence, management and control of the educational affairs of the district, and, therefore, shall have all the powers reasonably necessary to exercise powers granted expressly or by implication and to discharge duties imposed expressly or by implication by this chapter or other statutes.”
The petition, reduced to its simplest terms, complains that the Board exceeded its authority; and that before the contract was consummated it should have been submitted to the district voters for approval — or disapproval. This contention is based on the wording of subdivision 8 of section 2021 of the Education Larv (Powers of voters): “The inhabitants entitled to vote, Avhen duly assembled in any district meeting, shall have poAvcr, by a majority of the votes of those present and voting: * * * 8. To vote a tax upon the taxable property of the district * * * to hire or purchase rooms in buildings for school rooms or schoolhouses * * * to keep in repair and furnish the same with necessary fuel, furniture and appurtenances ”.
Section 2023 of the same chapter (Levy of tax for certain purposes Avithout vote) notes that: “If the qualified voters shall neglect or refuse to vote the sum estimated necessary * * * for ordinary contingent expenses, the * * * board of education may levy a tax for the same, in like manner as if the same had been voted by the qualified voters.”
Respecting these íavo latter sections, petitioner has noted in his brief “that a reading of these provisions Avould indicate that the school board has the authority and poAvcr to lease the type of building in issue herein, lioAvever the school board must submit to the voters the issue of raising the necessary monies to pay for the rental thereof, and if the voters determine not to vote for same or neglect tó vote for same, then the school board may on its oavu, raise the monies required ”.
*946 What he is saying, in effect, is that the Board must go to the expense of holding a district meeting and if the proposition fails, then, to alleviate the conceded condition of overcrowding it may take it upon itself to raise the needed revenues.
With neither the indication expressed nor the interpretation advanced does the court agree.
In Matter of Burns (1 Misc 2d 491, 494), the court said that “A literal construction of section 2023 would require that no item could be regarded as an ordinary contingent expense unless it was included in the budget as a condition to refusal or neglect. * * * Asa consequence, the board, without a minimum delay
of twenty-two days for calling a special meeting, would be left powerless to correct an unforeseeable fire hazard for which no appropriation was made in the budget or to rent urgently needed premises for more than the amount estimated in the budget even though the underestimate was made with due care and in good faith.”
To adopt petitioner’s position would, in the circumstances, be to exalt form over substance. Subdivision 7 of section 1709 has about it a sense of urgency, of an emergency not created by the Board, but which it must meet and deal with without delay. Section 2021 is more concerned with foreseeable matters which can be handled in more leisurely fashion at an annual or special district meeting.
It is of some significance, too, that with a knowledge of the situation, the Commissioner of Education approved the contracts, even though belatedly submitted, and raised no issue about the prerequisite of approval by a district meeting.
Thus it is held that the Board’s action was proper and correct and that the contract is legal and binding.
Respondent Board in an amendment to its answer, interposed the affirmative defense that the relief sought in the petition is not available to the petitioner under CPLR article 78.
Having decided the issue on the merits, it becomes unnecessary to discuss the procedure adopted and petitioner, having selected his forum, can scarcely now be heard to complain.
The court holds that the other sections of the Education Law, namely sections 408, 416 and 1716, cited by petitioner, have no application in the instant proceeding; nor has there been any violation of any provision of the State Constitution. The petition is dismissed, without costs.