In the Matter of Louis J. Raffone, Respondent, *v.* Clyde Pearsall, as Supervisor of the Town of Islip, et al., Respondents, and Seymour Rankowitz, as President of the Board of Education, School District No. 3, East Islip, Town of Islip, Appellant.

Second Department, June 14, 1972.

*H. Dexter Wetherell* (*George C. Pratt* of counsel), for appellant.

*Siben & Siben* (*Bernard M. Rosen* of counsel), for Louis J. Raffone, respondent.

*Sneeringer & Rowley* (*Richard R. Rowley* and *Jeffrey G. Plant* of counsel), for New York State Teachers Association, *amicus curiae*.

GULOTTA, J.  The judgment under review in this proceeding pursuant to article 78 of the CPLR, which was instituted by a real estate taxpayer of the Town of Islip, adjudged null and void the supplemental school budget adopted by the Board of Education of Union Free School District No. 3, East Islip, Town of Islip, on October 1, 1971, revising the budget for the school year 1971–1972 upward, from $11,469,866 to $11,650,754. Although all of the members of the Board of Education, other than its president, Seymour Rankowitz, have not been named as parties to this proceeding, they might appropriately be deemed parties thereto and considered collectively the appellant on this appeal.  The title of this action is deemed amended accordingly (CPLR 1023; *Free Synagogue of Flushing* v. *Board of Estimate of City of N. Y.*, 57 Misc 2d 80, 85).

The additional $180,888 by which the appellant in its resolution increased the subject school budget has not been expended by the appellant in the light of the Special Term's determination that the adoption of the resolution without approval by the majority of the qualified voters of the school district is illegal.  That fund has been delivered to the Receiver of Taxes of the Town of Islip, to be paid over by him as ultimately directed by the court.

On June 23, 1971 the qualified voters of the school district approved a budget which had theretofore been prepared by the prior Superintendent of Schools for the district and approved

by the appellant. It provided, as above stated, for the expenditure of $11,469,866 for the operation of the schools in the district for the school year 1971–1972.

On July 1, 1971 a new Superintendent of Schools was appointed for the district. After inspection of the schools in the district and analyzing the budget which his predecessor had prepared, he found the budget to be inadequate in certain respects and allegedly inaccurate and underestimated. He submitted a report to the appellant at the special meeting held of the members of the appellant on October 1, 1971.

After considering his report and schedule for a revised budget the members of the appellant board unanimously resolved, without prior approval of the qualified voters in the school district, to revise the budget in accordance with that schedule, thus increasing the budget to the extent of $180,888.

The petitioner claims that this revision is arbitrary, capricious and illegal since the qualified voters in the district had no opportunity to vote on it. The Special Term found the budget to be illegal to the extent of the increased expense of $180,888.

The appellant seeks to reverse the judgment on two grounds, to wit: (1) The petitioner's appropriate remedy was an appeal to the Commissioner of Education of the State under section 2024 of the Education Law and (2) under section 2023 of the Education Law it (the appellant) had the power to increase the budget, without prior approval of the district's qualified voters, because all of the items of expense added to the voter-adopted budget of June 23, 1971 constituted " ordinary contingent expenses ". I will discuss the appellant's contentions seriatim.

### (1)

Concerning the appellant's contention that a party aggrieved by a board's finding that an expenditure is an " ordinary contingent expense " should or must appeal from that finding to the Commissioner of Education, the authorities hold that the aggrieved party may adopt that procedure or he may at his option appeal to the court in the first instance, although in most cases it is preferable first to appeal to the Commissioner because of his expertise on the subject (cf. *Matter of Reiss* v. *Abramowitz,* 39 A D 2d 916; *Matter of Reinken* v. *Keller,* 53 Misc 2d 944; *Matter of Leeds* v. *Board of Educ., Union Free School Dist. No. 23,* 19 Misc 2d 860, affd. 9 A D 2d 905; *Matter of Levert* v. *Gavin,* 39 Misc 2d 569; 1 Ed. Dept. Rep. 805, 810 [Opn. No. 93]).

## (2)

There are unforeseen contingencies that may arise after a budget for a school year has been adopted which dictate that a Board of Education should have the power to increase the budget to take care of such contingencies, without first procuring approval by the school district's voters.

There is a dearth of court decisions pertaining to this. In *Matter of Burns* v. *Wilson* (1 Misc 2d 491) the Board of Education of a central school district in Sullivan County found itself unexpectedly deprived of necessary school space upon the commencement of the school year. To remedy this unexpected problem, the board, without notice to the qualified voters in the district, remodeled a farmhouse on the district's property to provide classroom facilities. The board had not called a meeting of the qualified voters in the district before going to that expense. To have called a meeting would have entailed undue delay in the commencement of the alterations. The board allocated the expense of the remodeling to '' ordinary contingent expenses ''. The petitioners, qualified voters in the district, on learning of this, appealed to the Commissioner of Education. Their appeal was dismissed. They then sought to review the Commissioner's ruling under article 78 of the Civil Practice Act. The court sustained the Commissioner's ruling and dismissed the petition.

*Burns* (*supra*) was cited with approval and followed by the Special Term in Suffolk County in *Matter of Reinken* v. *Keller* (53 Misc 2d 944, 946, *supra*). In *Reinken,* after the annual budget for the school district there in question had been adopted, the schoolhouses in the district became overcrowded, due to a sharp population increase. The Board of Education of the district, without calling a meeting of the district's qualified voters, made a three-year contract to rent and equip so-called '' relocatable '' buildings as necessary classrooms. The court held that that action was justified under the circumstances, that is, that the expenditure constituted an '' ordinary contingent expense ''.

In *Matter of Reiss* v. *Abramowitz* (39 A D 2d 916, *supra*), a Board of Education adopted an austerity budget. Thereafter, the petitioner, a qualified voter in the district, proceeded under article 78 of the CPLR to compel the board to supply textbooks omitted from this austerity budget, claiming such expenditure was an '' ordinary contingent expense ''. In affirming the Special Term, this court held that the supplying of these textbooks was not such an expense and that the expense was not mandated by

and that the expense was not mandated by the Education Law. Further, concerning the petitioner's demand for supplies in a chemistry class this court suggested an appeal under section 2024 of the Education Law from the board's failure to include such supplies in the budget, as an appropriate remedy.

There also have been some formal opinions by counsel for the Commissioner of Education (1 Ed. Dept. Rep. 805 [Opn. No. 93]; 7 Ed. Dept. Rep. 153 [Opn. No. 213]) wherein counsel stated, in effect, that there was no hard and fast rule as to what might constitute "ordinary contingent expenses" which a Board of Education unilaterally might incur and that each case should be decided on its own facts and circumstances.

In my opinion there should be a more definite guideline both for Boards of Education and to protect the voters of a school district in such a situation. I suggest that "ordinary contingent expenses" should be construed as (a) expenses which could not reasonably have been foreseen or expected by a Board of Education when it adopted its annual budget and (b) New York State mandated expenses which the annual budget failed to contain.

Applying such guidelines to the situation at bar it is my opinion that the following expenses incurred by the Board of Education after the adoption of its budget on June 23, 1971 are "ordinary contingent expenses" which it properly incurred (without prior voter approval):

(1) *Electricity Expense: $14,000.* It was only after the budget had been adopted that the Long Island Lighting Company restructured its rates and the board learned that the company had underestimated the expense of electricity for the new school building. Therefore the board, subjected to those unforeseen contingencies, required that additional expense.

(2) *Telephone Expense: $7,000.* The annual budget contemplated $37,000. In July, 1971, after the adoption of the budget, the board was informed that there would be an increase of telephone rates of between 25% and 26%. In view of this and to take care of this unexpected increase, the budget for telephones was thus necessarily increased.

(3) *Districtwide Transportation: $20,096.* It appears from the record that, as a safety measure, the State mandates that no more than 12 children shall be found standing in a school bus after the bus is in motion. It appears that when school classes began in the fall of 1971, with three rented buses less than the prior year (because of a budget cut), as many as 20 to 40 children were standing in buses while they were in motion. There-

fore, it apparently became necessary to replace the three buses which had been eliminated from the budget.

(4) *Teachers' Retirement: $14,100.* The State has mandated an increase of retirement benefits for teachers. With the approval of the new contract, the noncontributory feature of retirement benefits was extended to substitute teachers. Therefore, $14,000, in addition to $1,007,680 retirement expenses contained in the budget adopted in June, 1971, became necessary.

(5) *Social Security Expense: $13,387.* It could not be ascertained before the June, 1971 budget was prepared what the increased social security expense might be for the year beginning January, 1972. It was only after the budget had been adopted that the board learned that an additional $13,387 would be required as the employer's share of the increased tax.

(6) *Health Insurance Expense: $21,436.* Under the contract between the school district and its employees, the district as employer was required to furnish its employees with health insurance as a fringe benefit. In August, 1971 the premium rates were increased (an unforeseen contingency); thus, that additional contingent expense.

(7) *Dental Insurance: $8,020.* Likewise, the district's collective bargaining agreement with its employees gave its employees dental insurance as a fringe benefit. In *July, 1971* the board was notified of a 15% increase in premiums effective October 1, 1971; this was also an unforeseen contingency.

I find, on the record here, the following expenditures contained in the supplemental budget adopted by the appellant on October 1, 1971 are not " ordinary contingent expenses ", because in my opinion they reasonably might have been foreseeable by the appellant prior to the adoption of the voter-approved budget on June 23, 1971: (1) Superintendent's moving, $1,600; (2) Superintendent's travel, recruitment and conference, $2,027; (3) fuel oil and gas, $20,000; (4) repairs and construction, $38,372; (5) guard service, $8,000; and (6) custodial salaries, $45,600.

The reason why the allowed " ordinary contingent expenses " and the disallowed items, when taken together, exceed the above-mentioned $180,888 in the possession of the Receiver of Taxes is because the appellant had reduced some of the items in the original adopted budget.

Although the Receiver of Taxes of the Town of Islip did not answer on the merits in this proceeding (since his duty here has only been ministerial), he has agreed to abide by the final decision in this action. Accordingly, he should be directed to pay over to the appellant Board of Education the sum of $98,039

out of the $180,888 collected school taxes in his possession for the subject school year above the adopted budget taxes of $11,469,866. Such payment of $98,039 would cover the foregoing allowed " ordinary contingent expenses " the board incurred for the subject school year.

In my view, all of the other expenses labeled by the Board of Education as " contingent " expenses over and above the voter-adopted budget could reasonably have been foreseen before that budget was submitted and adopted. The Receiver of Taxes should be directed to deliver the balance of $82,849 out of the above $180,888 to the appellant Board of Education, to be applied by it on account of the budget adopted for the school year commencing July 1, 1972.

The judgment should accordingly be reversed, on the law and the facts, without costs; the items totaling $98,039 should be adjudged valid as " ordinary contingent expenses " for the school year 1971–1972; and that amount should be paid by the Receiver of Taxes of the Town of Islip to the appellant Board of Education; and the Receiver of Taxes shall also pay to the appellant Board of Education $82,849, the balance of the $180,888 fund, for application to the budget for the school year 1972–1973.

HOPKINS, Acting P. J., LATHAM, SHAPIRO and CHRIST, JJ., concur.

Judgment reversed, on the law and the facts, without costs; the following items in the supplemental budget are declared valid, as ordinary contingent expenses: (1) electricity, $14,000, (2) telephone, $7,000, (3) districtwide transportation, $20,096, (4) teachers' retirement, $14,100, (5) social security, $13,387, (6) health insurance, $21,436, and (7) dental insurance, $8,020; the total of said amounts of these items, $98,039, shall be paid by the Receiver of Taxes of the Town of Islip to the Board of Education of School District No. 3, East Islip, Town of Islip, Suffolk County, for application to said board's budget for the school year 1971–1972; the following items in the supplemental budget are declared not ordinary contingent expenses and therefore invalid: (1) Superintendent's moving, $1,600, (2) Superintendent's travel, recruitment and conference $2,027, (3) fuel oil and gas, $20,000, (4) repairs and construction, $38,372, (5) guard service, $8,000, and (6) custodial salaries, $45,600; and said Receiver of Taxes shall also pay to said Board of Education the balance of the $180,888 fund held by him, namely $82,849, for application to said board's budget for the school year 1972–1973.