OPINION OF THE COURT
Charles H. Cohen, J.
This is an action against the defendant City of New York by plaintiff wife to recover damages for personal injuries and by her husband, in a derivative action, to recover for medical services and expenses. There was a jury verdict in favor of the plaintiff wife but against the plaintiff husband. The plaintiff husband moved to set aside the verdict disallowing any recovery in the derivative action. The defendant moved to set aside the verdict in favor of the plaintiff wife on the ground that the notice of claim does not sufficiently describe "the place where” the claim arose as required by subdivision 2 of section 50-e of the General Municipal Law. With respect to defendant’s motion, it must be decided whether the notice was defective; if so, whether the defendant was prejudiced thereby; and if not, whether this court may disregard the defect.
THE NOTICE OF CLAIM
At the outset, it must be observed that compliance with section 50-e of the General Municipal Law is a condition precedent to a claim against a municipality. (Barchet v New York City Tr. Auth., 20 NY2d 1; see, also, Salesian Soc. v Village of Ellenville, 41 NY2d 521, 523; Visconti v City of New York, 45 AD2d 480, 481.) In an attempt to comply with this section plaintiffs served a notice of claim, which, in paragraph 3 stated: "The accident occurred on October 29, 1976, at approximately 1 p.m. on the public sidewalk on 36th Avenue between 24th Street and Crescent Street in Astoria, New York, as the claimant, Vivian Maiello, was walking on the sidewalk on the side of the street adjoining the Eliot Book Store toward Crescent Street. Claimant tripped over a defective raised sidewalk slab causing personal injury.”
With respect to "the place where” the claim arose, it is *1066 stated that it took place "on the public sidewalk on 36th Avenue between 24th Street and Crescent Street in Astoria, New York * * * on the side of the street adjoining the Eliot Book Store”. It is noted that the phrase "toward Crescent Street” modifies the verb "was walking” and does not state where, between 24th Street and Crescent Street, the accident occurred.
IS THE NOTICE DEFECTIVE?
The court of Appeals in Purdy v City of New York (193 NY 521, 523-524), referring to an earlier notice of claim statute set forth the following general principle concerning what must be stated as follows: "The plain purpose of this statute, and of similar provisions in the charters of the various municipalities throughout the state, is to guard them against imposition by requiring notice of the circumstances of an injury upon which a claim for damages is made, so that its authorities may be in a position to investigate the facts as to time and place, and decide whether the case is one for settlement or litigation. The statute before us, reasonably construed, does not require those things to be stated with literal nicety or exactness, but it does require such a statement as will enable the municipal authorities to locate the place and fix the time of an accident. When a notice contains the information necessary for that purpose, it is a substantial compliance with the statute, but when it falls short of that test it is insufficient.”
In Rozell v City of New York (271 App Div 832), the Appellate Division, Second Department, declared that: "The description of the alleged defective part of the sidewalk as 'on east side of Troy Avenue between Prospect Place and Park Place, in the Borough of Brooklyn, City and State of New York’ was vague and rendered the notice of intention to sue fatally defective.” The kind of information set forth in the Rozell notice and in the notice before this court is the same. In each, reference is made to a sidewalk on a particular side of a named street between two named intersecting streets.
Beyer v City of North Tonawanda (183 NY 338), relied upon by plaintiffs, is distinguishable since the notice in that case did not merely state that the accident occurred on a particular side of a named street between two named intersections but further stated that it occurred "about half way” between the two named intersections.
Of particular interest is Schwartz v City of New York (250 *1067 NY 332), also relied upon by plaintiffs. In that case, the notice claimed negligence of defendant’s employees " 'in permitting a fire to be made in St. Mary’s Park on St. Ann’s Avenue and 141st Street in the Borough of The Bronx, near where said infant was sitting at said time’ ” (supra, p 334). The court stated that "The real question is whether the notice is defective through its omission to state the particular place in the park of thirty-two acres where the accident occurred” (supra, p 334).
After making the general statement that "The place must be stated with sufficient particularity to enable the city to investigate the claim of negligence. Nothing more may be required. Circumstances must determine in each case whether the notice served is sufficient”, the court declared that "[t]he information contained in the notice of claim that the injuries were sustained by a fire in a small park was sufficient to enable the city to investigate the claim. It left no room for conjecture on the part of the city as to what particular fire the injured party would claim caused the injury” (supra, p 335).
However, before considering the specific incident involved, that is, a fire, the court, with respect to a defective sidewalk, declared (supra, at p 335): "It may be conceded that in a number of cases the court had held notices insufficient though the place of the accident was stated with greater nicety and accuracy than in this case (Purdy v. City of New York, supra; Casey v. City of New York, 217 N. Y. 192; Weisman v. City of New York, 219 N. Y. 178.) In those cases the plaintiff claimed that a defective sidewalk caused the injuries. Though the city may have information that a person was injured at a particular time and place, yet the statute requires that the injured party should file a notice stating the 'time and place at which the injuries were received,’ in order to apprise the city of the nature of the claim that may be made against it, and thus to give the city the opportunity to investigate such claim. Sidewalks are, ordinarily, not kept in a perfectly smooth condition. In the space of a few hundred square feet there may be many cracks, depressions and other defects of greater or less moment. The city cannot investigate a claim that a particular defect caused injuries unless the place is stated with sufficient particularity to enable the city to locate that defect and investigate the claim. We held that only such a notice constitutes a substantial compliance with the statute.”
It appears, then, that where the claimed defect involves a *1068 defective sidewalk, a high degree of particularity in the description of the place where the defect appears, is required. Where it is claimed, for example, that a relatively unusual occurrence such as a fire took place in a certain area, a high degree of particularity is not necessary. Thus, if there were a claim of negligence arising out of a fire on a sidewalk on a particular side of a named street between two named intersecting streets, a notice in the form presented in this case might be sufficient. However, since defects in sidewalks are common, the municipality is entitled to more particularity in order to enable it to locate the particular defective sidewalk said to have caused the accident. In this case, involving a claim of a defective sidewalk, the notice of claim is insufficient and is defective. (Rozell v City of New York, 271 App Div 832, supra.)
WAS DEFENDANT PREJUDICED?
It becomes important to determine whether defendant was prejudiced by the defective notice since subdivision 6 of section 50-e of the General Municipal Law states: "Mistake, omission, irregularity or defect. At any time after the service of a notice of claim and at any stage of an action or special proceeding to which the provisions of this section are applicable, a mistake, omission, irregularity or defect made in good faith in the notice of claim required to be served by this section, not pertaining to the manner or time of service thereof, may be corrected, supplied or disregarded, as the case may be, in the discretion of the court, provided it shall appear that the other party was not prejudiced thereby.”
In this case, the jury made a finding that the length of Eliot Book Store along 36th Avenue between 24th Street and Crescent Street was 80 feet. There was testimony that Eliot Book Store took up three fourths of the block so that the length of the entire block is only slightly more than 100 feet. Further, the notice describes the defect with some particularity stating it was "a defective raised sidewalk slab.” On January 7, 1977, less than two and one-half months after the occurrence, defendant took a photograph of the sidewalk along Eliot Book Store where it was claimed plaintiff fell. While the photograph portrays the whole block rather than the claimed defect, it indicates that defendant was in a position to, and did, investigate the claim. In "the context of this situation” it has not been shown that the failure of the plaintiff to have more *1069 specifically set forth the location of the defect has prejudiced the defendant. (Dillard v City of New York, 67 AD2d 878, 879; see, also, Mahoney v Town of Oyster Bay, 71 AD2d 879; Sanchez v City of New York, 25 AD2d 731.)
MAY THIS COURT DISREGARD THE DEFECT?
A question has been raised as to the jurisdiction of this court to disregard the defect as a consequence of subdivision 7 of section 50-e of the General Municipal Law which reads as follows: "Applications under this section. All applications under this section shall be made to the supreme court or to the county court: (a) in a county where the action may properly be brought for trial, (b) if an action to enforce the claim has been commenced, in the county where the action is pending, or (c) in the event that there is no motion term available in any of the counties specified in clause (a) or (b) hereof, in any adjoining county. Where the application is for leave to serve a late notice of claim, it shall be accompanied by a copy of the proposed notice of claim.”
At first blush, this subdivision would seem to require that a claim for relief under subdivision 6 must be made in the Supreme Court or County Court. It states that "All applications under this section” shall be made to those courts, seemingly excluding all other courts. It is further noted that the last sentence of subdivision 7 states "Where the application is for leave to serve a late notice of claim, it shall be accompanied by a copy of the proposed notice of claim.” Since this sentence was not placed in subdivision 5, which relates to applications made for leave to serve late notice, there seems to be an implication that subdivision 7 refers to applications other than those made under subdivision 5. Since no provision for relief is made in any subdivision of the statute other than 5 and 6, it may be contended that* subdivision 7 refers to requests for relief made under subdivision 6 as well as subdivision 5.
On the other hand, it appears that a request for relief under subdivision 6 is no longer an "application” — unlike subdivision 5, it is not entitled "Application” — and that since relief under subdivision 6 may be sought "at any stage of an action”, it necessarily permits any court in which the action is pending to grant such relief.
In order to understand the problem, it is essential to consider the history of this statute. When first enacted by chapter *1070 694 of the Laws of 1945, subdivision 6 read as follows: "Before the trial of an action or the hearing upon a special proceeding to which the provisions of this section are applicable, a mistake, omission, irregularity or defect made in good faith in the notice of claim required to be served by this section, not pertaining to the manner or time of service thereof, may be corrected, supplied or disregarded, as the case may be, in the discretion of the court, provided it shall appear that the other party was not prejudiced thereby. Application for such relief shall be made before trial by motion, on affidavits.” Since the last sentence did not state that the "Application” for this relief had to be made in a particular court, it presumably meant that this relief might be made in the court in which the action was pending. In contrast, subdivision 5, providing for an application for leave to serve a late notice of claim, specifically required that such an application be made at the Supreme Court or County Court.
By chapter 732 of the Laws of 1966, the sentence in subdivision 6 beginning with the word "Application” was. amended to read "Application for such relief, if made before trial, shall be by motion, on affidavits; if made before the action is commenced, shall be made by motion, on the petition of the claimant, or someone on his behalf.” Apparently, this request for relief, if made in a pending action, could still be made in the court in which the action was pending.
In 1976, there was a general revision of section 50-e of the General Municipal Law. Subdivision 6 appeared in its present form, omitting any reference to an "Application” but containing new language to the effect that relief might be had at any time after the service of a notice of claim and "at any stage of an action”. At the same time, a new subdivision 7 appeared which read as follows: "Applications under this section. All applications under this section shall be made to the supreme court or to the county court in a county where the action may properly be brought for trial or, if an action to enforce the claim has been commenced, where the action is pending. Where the application is for leave to serve a late notice of claim, it shall be accompanied by a copy of the proposed notice of claim.”
In order to resolve these possibly conflicting subdivisions, the court has examined the legislative history leading to the enactment of the 1976 amendment (L 1976, ch 745) and of the *1071 1978 amendment (L 1978, ch 531), which changed subdivision 7 into its present form.
The 1976 amendment was enacted following a recommendation set forth in the Fourteenth Annual Report of the Judicial Conference. (See 1976 McKinney’s Session Laws, p 2071 et seq., esp p 2091.) The report pointed out that under the proposed subdivision 6, the mistake, omission, irregularity or defect could be corrected, supplied or disregarded "at any stage of an action * * * even on appeal, thus incorporating into section 50-e the liberal, discretionary power vested in the court under CPLR 2001” (emphasis in original). It further pointed out, with respect to subdivision 7, that "[n]o major change in present procedure is intended by this proposed new subdivision. Its purposes are only to place in a single subdivision all essential procedural provisions governing applications for leave to ñle a late notice” (1976 McKinney’s Session Laws, p 2091; italics supplied).
It was intended, then, that subdivision 7 was to apply only to subdivision 5 applications and not to subdivision 6.* This is confirmed by the memorandum of the Office of Court Administration which sponsored the 1978 amendment. It was made clear in this memorandum that the only purpose of the amendment was to establish additional counties in which the applications referred to in subdivision 7 might be made. The memorandum (see 1978 McKinney’s Session Laws, p 1933) states that the amendment "provides that in the event there is no motion term available in any of the counties now established by the statute as proper venue for such an application, it may also be brought in any adjoining county.” Interestingly enough, the memorandum goes on to say: "Under present law, applications under section 50-e are required to be made to the supreme court or county court in a county where the action may properly be brought for trial [generally the county in which the municipality, public authority or political subdivision is located (CPLR 504, 505)], or, if an action to enforce a claim has been commenced, in the county where the *1072 action is pending.” (Italics supplied.) Apparently, the Office of Court Administration believed that the reference in the existing subdivision 7 to the court "where the action is pending” referred only to an action in the Supreme Court or County Court. The Office of Court Administration, consistent with the Fourteenth Annual Report of the Judicial Conference, did not think that subdivision 7 applied at all with respect to subdivision 6 so that the change in the wording of subdivision 7 did not affect the right to relief under subdivision 6 in the court where the action was pending. As the memorandum states, the 1978 amendment was simply making "the venue provisions of section 50-e more flexible”.
Despite the reference in subdivision 7 that "[a]ll applications under this section shall be made to the supreme court or to the county court”, the legislative history of the statute makes it clear that it was not intended that subdivision 7 apply to subdivision 6. Reading all parts of the statute (Gaden v Gaden, 29 NY2d 80, 86), specifically the language in subdivision 6 stating that a mistake, omission, irregularity or defect may be corrected, supplied or disregarded "at any stage of an action” confirms this intention. In order to invoke subdivision 6, one need no longer make an "application”. As stated in Mahoney v Town of Oyster Bay (71 AD2d 879, supra): "Subdivision 6 of section 50-e of the General Municipal Law provides that an omission or defect in a notice of claim which was made in good faith may be corrected or disregarded at any stage of an action, in the court’s discretion, provided the other party was not prejudiced thereby.”
In any event, the court need not follow the literal words of a statute where to do so would produce a result that the Legislature clearly did not intend. (People v Ryan, 274 NY 149; see, also, Matter of Anderson v Board of Educ., 46 AD2d 360, 364, affd 38 NY2d 897.) Statutes should be interpreted in order to avoid an unintended result. (Matter of Meyer, 209 NY 386; Travis Fabrics v Lee Dyeing Co. of Johnstown, 68 Misc 2d 549, 553, affd 42 AD2d 626.) Moreover, to the extent that the statute may be regarded as ambiguous, it should be interpreted to avoid objectionable consequences (Metropolitan Life Ins. Co. v Durkin, 301 NY 376), and inconvenience. (Matter of Meyer, supra.) It certainly would be objectionable and inconvenient to require persons with cases pending in this court who seek relief under subdivision 6 to make application in the Supreme Court.
*1073 This court concludes that it has jurisdiction to grant relief in accordance with subdivision 6. In view of the fact that defendant has not been prejudiced, the defect in the notice of claim, made in good faith, is disregarded and defendant’s motion is denied.
THE DERIVATIVE ACTION
Since defendant’s motion has been denied, it becomes necessary to consider the motion of plaintiff husband to set aside the verdict disallowing any recovery in the derivative action. This motion raised this question: where a party recovers a verdict on a cause of action for personal injuries, may a verdict disallowing any recovery in the spouse’s derivative action be allowed to stand?
While there may be situations where the injuries were so minimal that a jury might find that the spouse suffered no damage at all, in this case, the plaintiff wife clearly suffered injuries of some consequence. She suffered substantial facial injuries and received hospital treatment. While a jury did not award her a large sum of money, from the nature of her injuries it may be inferred that the plaintiff husband suffered some injury. (De Ordio v Teresi, 65 AD2d 890, 891; Murphy v Durmiaki, 36 AD2d 556.)
Under these circumstances, the jury verdict with respect to the derivative cause of action of the plaintiff husband cannot stand. As stated in Gray v Brooklyn Hgts. R. R. Co. (72 App Div 454, 455): "It cannot be said that a wrong has been inflicted upon the wife by occasioning to her serious personal injuries without at the same time inflicting upon the husband some injury, as the legal burden of her care rests upon him and as, in accordance with the nature and extent of her injuries, he is deprived measureably of her aid and companionship * * * It necessarily follows that the same jury passing upon the same evidence could not consistently say that injury to the person of the wife constituted no wrong as against the husband.” To the same effect, see Rosen v Cathcart (245 App Div 736).
CONCLUSION
The court finds that while the notice of claim was defective it will be disregarded since it was made in good faith and did not cause prejudice to the defendant. The motion of the *1074 defendant to set aside the verdict in favor of the plaintiff wife is therefore denied.
The court finds that under the facts of this case the verdict in favor of the defendant against the plaintiff husband on his derivative cause of action is inconsistent with the verdict of the plaintiff wife on her action for personal injuries. The motion of plaintiff husband to set aside the verdict against him is therefore granted and a new trial is ordered with respect to the derivative cause of action.

 Actually, as enacted by chapter 745 of the Laws of 1976, subdivision 7 raised no substantial problem with respect to subdivision 6 requests for relief made in this court since its wording permitted an interpretation to the effect that application could be made to the supreme court or to the county court or to the court "where the action is pending”. However, when subdivision 7 was revised into its present form by chapter 531 of the Laws of 1978, the general reference to "where the action is pending” was omitted, permitting the argument to be made that all applications under the statute "shall be made to the supreme court or to the county court”.