Cooke, J.
 

 The Board of Education of Great Neck Union Free School District and the Great Neck Teachers’ Association, the latter being the negotiating agent for all teachers employed by the board, engaged in collective bargaining which culminated in a three-year agreement dated July 1, 1973. Article 32 of that agreement, entitled "personnel files”, provided in subdivision A that a teacher’s official personnel file was to include the following materials:
 

 "1. Application
 

 
 *528
 
 "2. Official statement of courses taken and degrees granted
 

 "3. Certificate
 

 "4. Military discharge paper (if any) and pertinent correspondence
 

 "5. Requests for salary re-classification
 

 "6. Requests for leave
 

 "7. Requests for transfer or promotion
 

 "8. Recommendations from previous employers
 

 "9. Principal’s evaluations made subsequent to July 1, 1968
 

 "10. All commendations
 

 "11. Communications relating to service with professional organizations
 

 "12. Reports of disciplinary action taken.”
 

 Access to that file was to be governed by subdivision E which provided that each faculty member’s file shall be available for inspection only to:
 

 "1. The Superintendent
 

 "2. The Assistant Superintendents
 

 "3. The Director of Elementary or Secondary Instruction or Pupil Personnel Services, depending on which one of these is appropriate to the particular faculty member
 

 "4. The Director of Personnel
 

 "5. The Building Principal
 

 "6. The faculty member whose file it is.”
 

 Article 18 of the agreement contained provision for the resolution of grievances by arbitration, the term "grievance” being defined therein as "any claimed violation, misinterpretation or inequitable application of existing laws, Board policies, rules, procedures, regulations, administrative orders or rules governing conditions of professional service to the extent provided by law; or the provisions of this agreement.”
 

 A demand for arbitration, dated October 4, 1974, was served upon the board. In its demand, the Teachers’ Association asserted that the board "violated Articles 1, 3 C7, 32 et al of the 1973-76 collective bargaining agreement” such violation occurring as a result of: (A.) The examination by Board of Education members, of teachers personnel files; and (B.) The adoption, by the Board of Education, of the following resolution: "Resolved, that the Board of Education authorizes, empowers and directs the Superintendent of Schools and/or
 
 *529
 
 other members of the school administration having jurisdiction thereof to make available to said Board or any member of the Board any and all written, formal evaluations and observation reports of all school personnel for the examination of said Board.”
 

 The remedy sought was fivefold: (1) rescission, by the Board of Education, of resolution quoted above; (2) destruction of all copies of items in teachers’ personnel files currently in possession of any member of the Board of Education; (3) a save-harmless guarantee for all teachers whose personnel files were reviewed by members of the Board of Education; (4) immediate and complete termination of examination of teachers’ personnel files by Board of Education members; and (5) any other remedy the arbitrator may deem appropriate.
 

 The theory underlying the association’s demand was that the Board of Education, not being listed in subdivision E of article 32, does not have the right to inspect teacher personnel files and, having breached the agreement by inspection of such files and by adoption of the afore-mentioned resolution, may be called to account before the arbitrator.
 

 An application to stay arbitration was made by the Board of Education and granted by Special Term. Accepting the board’s position, the court reasoned that while our State recognizes and respects agreements to arbitrate, citing
 
 Matter of Exercycle Corp. (Maratta)
 
 (9 NY2d 329), an exception to that policy exists where the performance which is the subject of the demand for arbitration is prohibited by statute. The court viewed the instant case as falling within the ambit of that exception. Reliance was not placed upon a particular prohibiting statute, but rather upon the nondelegable statutory duty of the board to employ qualified teachers (Education Law, § 1709). Since the ultimate obligation or responsibility is the board’s, "it follows”, wrote Special Term, "that its members have an inherent right to review the records and files of those whom they employ. Indeed, under section 3010 of the Education Law, members of a board of education might well subject themselves to criminal liability by failing to assure themselves of the qualifications of teachers whose employment they approve.” (80 Misc 2d 659, 662.) Thus, arbitration was permanently stayed, the court holding the dispute not arbitrable.
 

 At the Appellate Division, Special Term’s order was reversed. In the appellate court’s view, the Education Law presented no bar to a collective bargaining agreement limiting
 
 *530
 
 a board of education’s right to inspect teacher personnel files. Whether the agreement did so limit the board’s right, was, the court held, a question for the arbitrator.
 

 The Appellate Division’s reversal vests this court with jurisdiction and places before us the question of whether a board of education has the freedom to bargain away its right to inspect teacher personnel files. Numerous factors considered, our answer to this question is no. Such decision we ground not merely upon the several statutory provisions yet to be discussed, but, additionally, upon a base of public policy.
 

 To begin, we note that this is but another variant in a line of recent cases wherein the board of education of a school district, be it union free, city or other, has entered into a collective bargaining agreement with the recognized organization representing the district’s teachers and then, later, raises questions as to its power to agree and bind itself to certain of the contract provisions (see, e.g.,
 
 Board of Educ. v Associated Teachers of Huntington,
 
 30 NY2d 122 [various economic benefits and arbitration of disputes concerning disciplinary action];
 
 Syracuse Teachers Assn. v Board of Educ.,
 
 35 NY2d 743 [establishment of a "Sick Leave Bank”];
 
 Matter of Susquehanna Val. Cent. School Dist. at Conklin [Susquehanna Val. Teachers’ Assn.],
 
 37 NY2d 614 [staff size];
 
 Matter of Union Free School Dist. No. 2 of Town of Cheektowaga v Nyquist,
 
 38 NY2d 137 [transfer credits];
 
 Matter of Cohoes City School Dist. v Cohoes Teachers Assn.,
 
 40 NY2d 774 [tenure determinations]; cf.
 
 Matter of West Irondequoit Teachers Assn. v Helsby,
 
 35 NY2d 46 [class size]).
 

 In the earliest of these cases,
 
 Board of Educ. v Associated Teachers of Huntington
 
 (30 NY2d 122, 130,
 
 supra),
 
 we recognized that absent a statutory provision expressly or impliedly prohibiting collective bargaining as to a particular term or condition of employment, boards of education are presumed to possess the broad powers needed to negotiate with employees. In
 
 Syracuse Teachers Assn. v Board of Educ.
 
 (35 NY2d 743, 744,
 
 supra),
 
 this court construed the
 
 Huntington
 
 language "to mean that collective bargaining under the Taylor Law (Civil Service Law, § 204, subd. 1) has broad scope with respect to the terms and conditions of employment, limited by plain and clear, rather than express, prohibitions in the statute or decisional law (see, generally,
 
 Matter of West Irondequoit Teachers’ Assn. v. Helsby,
 
 35 N Y 2d 46, citing and discussing the
 
 Huntington
 
 case).” Further clarification and elucidation of
 
 *531
 
 the limitation or restriction is to be found in
 
 Matter of Susquehanna Val. Cent. School Dist. at Conklin [Susquehanna Val. Teachers’ Assn.]
 
 (37 NY2d 614,
 
 supra).
 
 There, public policy was presented as a possible restriction independent of statute. The court explained: "Public policy, whether derived from, and whether explicit or implicit in statute or decisional law, or in neither, may also restrict the freedom to arbitrate” (37 NY2d, at pp 616-617). In
 
 Matter of Cohoes City School Dist. v Cohoes Teachers Assn.
 
 (40 NY2d 774,
 
 supra),
 
 the majority of this court held unenforceable a contract provision which purported to prohibit termination of nontenured teachers at the end of the probationary period without just cause. The court identified the several sections of the Education Law which vest in the board of education the authority to make tenure decisions (Education Law, §§2509, 2573, 3012, 3013, 6206) and recognized that, as such responsibility cannot be delegated or abnegated, it is "beyond the power of the board to surrender this responsibility as part of any agreement reached in consequence of collective bargaining” (40 NY2d 774, 778). While the court reiterated the general rule that any matter in controversy between a board of education and its teachers may be the subject of collective bargaining, it relied upon the limitation placed upon that rule by public policy, implicit there in the several sections of the Education Law.
 

 Different from private matters where freedom to contract is virtually unlimited, public school matters are, from time to time, subject to restrictive policies which reflect governmental interests and public concerns
 
 (Matter of Susquehanna Val. Cent. School Dist. at Conklin [Susquehanna Val. Teachers’ Assn.],
 
 37 NY2d 614, 616,
 
 supra).
 
 Boards of education are but representatives of the public interest and the public interest must, certainly at times, bind these representatives and limit or restrict their power to, in turn, bind the public which they represent. This said, we must now examine the nature of a board of education’s right to inspect teacher personnel files as reflected in the light of existing statutes and public policy, the latter as expressed within or without such statutes.
 

 The State Legislature has, in the Education Law, made provision for,
 
 inter alia,
 
 an Education Department, charged with the general management and supervision of all public schools (Education Law, § 101). The Regents of the University of the State of New York head that department and have the power to appoint the Commissioner of Education, the Chief
 
 *532
 
 Administrative Officer (Education Law, § 101; see, generally, Graves, Development of the Education Law in New York, McKinney’s Cons Laws of NY, Book 16, Education Law, pp XII-XVII). School districts of various types including common school districts (art 33), union free school districts (art 35), central school districts (art 37) and city school districts (arts 51, 52) likewise owe their continuing existence to the Legislature (Education Law, § 1501), as do their governing bodies, their boards of education (or in the case of common school districts, boards of trustees). In the instant case, we are concerned with the board of education of a union free school district, the powers and duties of which are set forth in section 1709
 
 et seq.
 
 of the Education Law. One such duty with its concomitant power is the duty "[t]o contract with and employ such persons as by the provisions of this chapter are qualified teachers” (Education Law, § 1709, subd 16). As the board indicates in its argument, its total and unrelieved accountability for compliance with subdivision 16 of section 1709 is made clear in section 3010 of the Education Law, which provides that "Any trustee or member of a board of education who applies, or directs, or consents to the application of, any district money to the payment of an unqualified teacher’s salary, thereby commits a misdemeanor; and any fine imposed upon him therefor shall be for the benefit of the common schools of the district.” Having ultimate, ongoing and fixed responsibility for employing qualified teachers, the board must have access to its teacher’s personnel files.
 

 Similarly, the necessity of access to teacher’s personnel files is highlighted when focusing upon the board of education’s authority and responsibility to grant or deny tenure (see, e.g., Education Law, §§ 3012, 3013, 3031). The relatively recent amendment to section 3031 of the Education Law, for example, gives a teacher the right to request from the board a written statement of that body’s reasons for its intention not to grant tenure when tenure has been recommended by a superintendent or district principal and provides that "within seven days thereafter such written statement should be furnished” (Education Law, § 3031, subd [b]). Absent access to teacher personnel files, the board’s ability to make such independent determinations, as well as its ability to furnish written statements in support thereof, would be impaired greatly. Moreover, as referred to in
 
 Matter of Anderson v Board of Educ.
 
 (38 NY2d 897), section 3031 may lead to a
 
 *533
 
 situation where a superintendent is called upon to justify and defend his decisions before the board. That board, receiving such a presentation but without all relevant materials independently available to it, would not be in an effective position from which to question or challenge. Certainly, boards of education, representatives of the points of view of the community and responsible for the "superintendence and management” of the educational affairs of the district must be on equal footing with superintendents and principals, representatives of the points of view of professional educators. The balance is one set by public policy. It cannot be tipped by an act of the board.
 

 Our recognition that a board of education has the right to inspect teacher personnel files and has no power to bargain away such right is supported by statute and public policy. The right of which we speak, however, must be considered from the point of view of the teachers whose files must remain open to their employer. The Teachers’ Association characterizes article 32 of the collective bargaining agreement as merely an attempt to prevent lay members of the Board of Education from randomly perusing teacher files and making judgments concerning teacher performance without one of the professionals listed in the agreement laying a proper foundation. This argument has two aspects, one related to perusal, the other to independent judgments. It cannot be disputed that the board can make judgments different from those of the professionals it employs (see, e.g., Education Law, § 3031) even where the foundation has been laid. Thus, it is not the independence of the judgment that the teachers can rightfully question but, rather, the random perusal of their files. While the board has the right and the duty to inspect teacher’s personnel files, there is no question that any inspection must be related to legitimate board purposes and functions.
 

 Under section 88 of the Public Officers Law, while certain records are open and available to the public, employee personnel files constitute one of the enumerated exceptions (Public Officers Law, § 88, subd 3, par b). Thus, teachers and other public employees can expect a measure of personal privacy as to the materials housed in the personnel files their employers maintain. Although access by the board of education cannot be limited, improper roving in personnel files should not be countenanced and, in fact, improper use of information thus obtained might serve as a ground for removal of a member of
 
 *534
 
 the Board of Education (Education Law, §§ 306, 1706; but cf.
 
 Komyathy v Board of Educ.,
 
 75 Misc 2d 859, 868-869).
 

 In that regard we note that while the Regents exercise legislative functions concerning the educational system of the State of New York and determine educational policy for the State (Education Law, § 207), both the Regents and the Commissioner of Education have the power to establish rules for carrying into effect the laws and policies of the State relating to education (Education Law, §§207, 301). Under section 306 of the Education Law, the commissioner, after a hearing and upon satisfactory proof, has the power to remove from office a member of a board of education if such member "has been guilty of any wilful violation or neglect of duty under this chapter * * * or wilfully disobeying any decision, order, rule or regulation of the regents or of the commissioner of education”, while under sections 1706 and 2559 the commissioner can remove a board member "for cause shown”. While improper use of materials gathered from personnel files might come within the language and operation of the existing provisions, the court takes this opportunity to suggest that, if there is significant evidence of abuse in this area, those with rule-making power should undertake a study so as to determine the need for a specific rule or regulation directed at preventing potential abuse, particularly as notice of proscribed conduct is an essential element of due process
 
 (Matter of Beal Props. v State Liq. Auth.,
 
 37 NY2d 861, 862).
 

 In conclusion we repeat that a board of education cannot bargain away its right to inspect teacher personnel files and that a provision in a collective bargaining agreement which might reflect such a bargain is unenforceable as against public policy.
 

 The order of the Appellate Division should be reversed, and that of Special Term, permanently staying arbitration, should be reinstated.
 

 Chief Judge Breitel and Judges Jasen, Gabrielli, Jones and Fuchsberg concur; Judge Wachtler taking no part.
 

 Order reversed, with costs, and the order of Supreme Court, Nassau County, reinstated.