OPINION OF THE COURT
George Beisheim, Jr., J.
Petitioner, Robert Gustin, a member of the Board of Education of Union Free School District No. 1 of the Town of Ossining, has instituted this CPLR article 78 proceeding against five of the six other members of said Board of Education for an order in the form of mandamus to compel the respondents to make available to petitioner all payroll records of Union Free School District No. 1 of the Town of Ossining.
The differences between petitioner and respondents have been the subject already of considerable litigation. Prior to January 8, 1978, petitioner made an application to the district superintendent, Thomas H. Shaheen, to examine payroll records of the school district, which request was denied. Thereafter, petitioner brought a CPLR article 78 proceeding before Honorable Fred A. Dickinson, a Justice of this court, to compel the district superintendent to make the payroll records available to him, and Judge Dickinson rendered a decision under date of December 5, 1977, directing the superintendent *278 to provide petitioner with the information which he sought. Respondents’ motion for leave to intervene in that proceeding was denied. Thereafter, Judge Dickinson, by order dated December 29, 1977, withdrew his first decision on the ground that he had overlooked a stipulation entered into between the parties that the court would first decide the procedural question raised by the respondent superintendent’s cross motion to dismiss, and then, should said cross motion be denied, respondent would be given an opportunity to serve an answer and to have the case fully submitted on the merits. Judge Dickinson let stand that part of his decision dismissing the cross motion to dismiss but permitted the respondent thereafter to serve an answer to the petition.
Before Judge Dickinson decided on the merits the issue between Mr. Gustin and the superintendent, the Commissioner of Education of the State of New York adopted a regulation, known as part 84, which became effective January 9, 1978. This regulation, under the title, "Access To School Employee Personnel Records” (8 NYCRR Part 84) reads as follows:
"84.1 Right of access by school board members. A board of education shall have right of access to personnel records of employees of the district, subject to the procedures hereinafter set forth.
"84.2 Procedures to obtain access. Examination of school employee personnel records by the board of education shall be conducted only at executive sessions of the board. Any board member may request the chief school officer to bring the personnel records of a designated employee or employees to an open meeting of the board. The board shall then determine whether to conduct an executive session for the purpose of examining such records. The chief school officer shall present such records to the board at the executive session. Such records shall, in their entirety, be returned to the custody of the chief school officer at the conclusion of the executive session of the board.
"84.3 Purposes and use. Information obtained from employee personnel records by members of the board of education shall be used only for the purpose of aiding the members of the board to fulfill their legal responsibilities in making decisions in such employee personnel matters as appointments, assignments, promotions, demotions, remuneration, discipline or dismissal, or to aid in the development and *279 implementation of personnel policies, or such other uses as are necessary to enable the board to carry out legal responsibilities.”
Upon the basis of part 84, Judge Dickinson dismissed the petition against the superintendent of schools, with leave to petitioner to follow the procedure set forth in what Judge Dickinson termed "Rule No. 84”.
At a regular meeting of the Board of Education held on April 19, 1978, petitioner moved that the board adjourn the meeting and go into private executive session for the purpose of reviewing the payroll printouts that petitioner had requested, which motion was seconded by Mr. Hugh Quinn. This motion was denied by the board by a 5 to 2 vote, petitioner and Mr. Quinn voting in favor of the motion and the 5 respondent members of the Board of Education voting against it.
Thereafter, on or about May 25, 1978, petitioner instituted the present CPLR article 78 proceeding against the five respondent members of the Board of Education.
In paragraph twelfth of the petition, it is alleged that the Superintendent of Education had publicly stated that it had long been the practice of the district to hire people without first obtaining board approval, although said practice is not permitted by law. This allegation is denied in the answer of the respondents.
Petitioner alleges his reason for desiring to inspect the payroll vouchers is that no material is available to him to determine whether the payroll is accurate, whether the persons being paid the sums required are being properly paid, and that petitioner desires to make sure that the payroll records are in proper form in order to carry out his legal responsibility as an elected member of the Board of Education.
Respondents in their answer raise the affirmative defense that the petition fails to state a proper cause of action and a second affirmative defense that the petitioner has not exhausted his administrative remedies in that he should appeal the adverse ruling of the majority of the Board of Education to the Commissioner of Education rather than directly to this court.
Both petitioner and respondents rely upon the decision of the Court of Appeals in Board of Educ. v Areman (41 NY2d 527) to support their respective positions. In the Areman case, *280 the Court of Appeals held that a provision in a collective bargaining agreement which restricted access to teacher personnel files to certain school administrative officials could not limit access by the Board of Education to such files in light of existing statutes and public policy. In that case, the collective bargaining agreement between the teachers’ association and the Board of Education provided that each faculty member’s file should be available for inspection only to the superintendent and four other specifically designated members of the school administration, which did not include members of the Board of Education. The teachers’ association sought arbitration of its charge that the board had violated certain sections of the collective bargaining agreement by the examination by the Board of Education members of teachers’ personnel files. An application to stay arbitration was made by the Board of Education and granted by Special Term (80 Misc 2d 659). The Appellate Division, Second Department, reversed Special Term (52 AD2d 573) and the Court of Appeals reversed the order of the Appellate Division and reinstated the order of Special Term which had permanently stayed arbitration. The court (Board of Educ. v Areman, 41 NY2d 527, 531), citing with approval Matter of Susquehanna Val. Cent. School Dist. at Conklin (Susquehanna Val. Teachers’ Assn.) (37 NY2d 614), stated:
"The court explained: 'Public policy, whether derived from, and whether explicit or implicit in statute or decisional law, or in neither, may also restrict the freedom to arbitrate’ (37 NY2d, at pp 616-617). (Emphasis added.)
"Different from private matters where freedom to contract is virtually unlimited, public school matters are, from time to time, subject to restrictive policies which reflect governmental interests and public concerns (Matter of Susquehanna Val. Cent. School Dist. at Conklin [Susquehanna Val. Teachers’ Assn.], 37 NY2d 614, 616, supra). Boards of education are but representatives of the public interest and the public interest must, certainly at times, bind these representatives and limit or restrict their power to, in turn, bind the public which they represent. This said, we must now examine the nature of a board of education’s right to inspect teacher personnel files as reflected in the light of existing statutes and public policy, the latter as expressed within or without such statutes.”
Respondents argue that the Areman case and part 84 of the regulations of the Commissioner of Education limits the right *281 of a member of the Board of Education to examine school employee personnel records unless a majority of the Board of Education permit him to do so. The Areman case, in the judgment of this court, stands for no such proposition, holding only that public policy denies a Board of Education the right to contract with a teachers’ association that the board would not be permitted to examine a teacher’s personnel file. The question of a single board member’s rights to examine records which he felt was necessary for him to do to carry out his duties under section 1709 and other sections of the Education law was not considered or passed upon by the Court of Appeals in Areman.
Mr. Justice Niehoff, who first decided the Areman case (80 Mise 2d 659, supra), and who, after a reversal by the Appellate Division, was ultimately affirmed in the Court of Appeals, addressed himself more closely to this point than did the appellate courts when he stated (pp 661-662): "The duties of boards of education are set forth in section 1709 of the Education Law and include the employment of qualified teachers. While it may well be that, in most instances, the qualifications of teachers are best evaluated by professionals in the field of education, much as superintendents and their assistants and other supervisory personnel, who may advise the members of school boards with respect thereto, the ultimate obligation or responsibility with respect to teacher employment is the board’s. That being so, it follows that its members have an inherent right to review the records and dies of those whom they employ. Indeed, under section 3010 of the Education Law, members of a board of education might well subject themselves to criminal liability by failing to assure themselves of the qualifications of teachers whose employment they approve. The duty is not one that they may escape by delegation. (See Garber v. Central School Dist. No. 1, 251 App. Div. 214, 219.) Neither the court nor an arbitrator can require the board to surrender that power.” (Emphasis added.)
To accept respondents’ interpretation of the Board of Educ. v Areman case (41 NY2d 527,supra) and 8 NYCRR Part 84 would be fraught with great danger both to an individual board member and to the public at large. For example, suppose a situation existed where there had been illegal actions or wrongdoing on the part of school administrators in whom a majority of the Board of Education had misplaced confidence, or assume even further that there had been wrongdoing by a *282 school administrator in complicity with a majority of the board members which might be proved by personnel records of school employees. Under respondents’ interpretation of the law, the minority member would be unable to investigate such a situation if a majority of the board resolved that he could not see records that might unearth the wrongdoing.
The examples hereinbefore given by the court are hypothetical, of course, and the court does not infer that such a situation exists in the case at bar. The court assumes that respondents are attempting to carry out their public duties in an honorable manner. The court also assumes that petitioner is attempting to carry out his duty in an honorable manner and can be trusted as an elected official to not misuse any confidential records to which he may have access.
The court is aware of the admonition of Judge Cooke set forth at page 534 of the Board of Educ. v Areman (41 NY2d 527, supra) case, "the court takes this opportunity to suggest that, if there is significant evidence of abuse in this area, those with rule-making power should undertake a study so as to determine the need for a specific rule or regulation directed at preventing potential abuse, particularly as notice of proscribed conduct is an essential element of due process.”
8 NYCRR Part 84 may well have been promulgated by the commissioner in response to the foregoing suggestion. It is salutary to the effect that records may be looked upon only in the presence of the entire board in executive session. If it means that a majority of the board can prevent a minority member from inspecting the records at all, the regulation is invalid as against public policy. This court, however, does not interpret part 84 in such a manner.
The court also finds without merit that petitioner should have brought his grievance to the Commissioner of Education before seeking relief from this court. The court has read the cases recited by respondents in support of this contention, namely (Matter of Bokhair v Board of Educ., 43 NY2d 855; Matter of Raffone v Pearsall, 39 AD2d 208; Duke & Benedict v Board of Educ., 81 Misc 2d 1043; Matter of Hardy v Commissioner of Educ., 66 Misc 2d 984; Matter of Levert v Gavin, 39 Misc 2d 569).
The court finds, however, that the cases cited by petitioner (to wit Matter of Levitch v Board of Educ., 243 NY 373; Matter of O'Connor v Emerson, 196 App Div 807; Matter of *283 Pare v Donovan, 54 Misc 2d 194; Matter of Rockland Bus Lines v Board of Educ., 43 Misc 2d 1060; Matter of Glen Truck Sales v Sirignano, 31 Misc 2d 1027) are more in point to the facts in the case at bar since this court is interpreting the applicability of a regulation of the Commissioner of Education to section 1709 and other sections of the Education Law.
Technically, it may well be that 8 NYCRR Part 84 was not applicable to this proceeding because petitioner’s application to inspect the records in question was made before part 84 became effective. The general rule is that a change of procedure operates prospectively. (Meliti v Board of Educ., 92 Misc 2d 473, affd 64 AD2d 631.) Be that as it may, this court believes that it is salutary to protect teachers’ personnel records as far as possible without denying each and every member of the Board of Education the right to inspect all school records which such a board member reasonably believes is necessary in order for him to properly perform his duties. Therefore, this court will adopt the procedure outlined in 8 NYCRR Part 84 insofar as such procedure does not deny the petitioner the right of inspection.
Accordingly, the court finds that judgment should be entered directing the respondents and all employees of the Board of Education of the Union Free School District No. 1 of the Town of Ossining under the respondents’ control to make available to petitioner all payroll records of Union Free School District No. 1 of the Town of Ossining for a period when petitioner became a member of the Board of Education of such school district, plus, if the petitioner deems it necessary after examining said records, all payroll records for two years prior to the petitioner assuming office. The judgment should contain a provision that these records may be examined by petitioner only in the presence of a majority of the members of the Board of Education or their designee, and a further provision that, for the purpose of future reference, that petitioner may make a note of the initials and date of any particular record he deems it necessary for him to do so in order for him to perform his duty as a member of the Board of Education, but shall not copy anything else from the records without further application to, and the obtaining of the permission of, this court. For this latter purpose, this court will retain jurisdiction of this proceeding.