In the Matter of BOARD OF EDUCATION OF MERRICK UNION FREE SCHOOL DISTRICT, Appellant, v MERRICK FACULTY ASSOCIATION, INC., Respondent.

Second Department, December 11, 1978

APPEARANCES OF COUNSEL

*Jerome S. Medowar* for appellant.

*Friedlander, Gaines, Cohen, Rosenthal & Rosenberg (Jeffrey P. Englander* and *Joseph S. Rosenthal* of counsel), for respondent.

## OPINION OF THE COURT

GULOTTA, J.

In this proceeding to stay arbitration, the petitioner school district is appealing from so much of a judgment of the Supreme Court, Nassau County, as denied the branch of its petition which pertained to a grievance filed by the respondent faculty association challenging a new regulation promulgated by the district affecting nonschool employment. For the reasons which follow, the judgment should be affirmed insofar as appealed from.

On or about April 26, 1977, the petitioner school district, through its board of education, adopted a new "personnel policy" affecting nonschool employment, which provided, *inter alia,* that school personnel, including teachers, would be per-

mitted to engage in outside employment, provided only that "these activities do not interfere with the proper discharge of their assigned duties or *do not cause poor community relations"* (emphasis supplied). Upon learning of the new regulation, the respondent faculty association took the position that the highlighted language was violative of paragraph D of article II of their collective bargaining agreement, which states, in pertinent part: "Teachers shall be entitled to full rights of citizenship and no *lawful* religious, political, civic, *economic* or social *activities of any teacher* or the lack thereof, *shall be grounds for any discipline,* discrimination or adverse action against any teacher" (emphasis supplied). Believing itself to be aggrieved in that the regulation, as written, not only infringes upon and is more restrictive than the parallel provision of the collective bargaining agreement, but also furnishes the district with a possible further ground for discipline, respondent filed a grievance pursuant to article XVIII of the agreement and, on or about August 26, 1977, served the district with a notice of intention to arbitrate, demanding that the "personnel policy" be either rescinded or amended to delete the reference to "caus[ing] poor community relations." At this point, the petitioner school district moved unsuccessfully to stay arbitration.

■ ■ On appeal, it is the district's contention that arbitration of the dispute in question is (1) premature and (2) violative of public policy. We cannot agree.

■ Beginning with a consideration of the first issue, it is petitioner's position that the instant dispute is not "ripe" for determination, since as yet no one has been disciplined for violating the subject "personnel policy". Accordingly, it is argued, arbitration must await enforcement of the challenged restriction against a named employee and may not be used to secure, in advance, a declaratory interpretation of the underlying agreement. This argument is not persuasive.

Article XVIII of the collective bargaining agreement (entitled "Grievances and Arbitration") specifically provides, in paragraph A, that: "In order to continue harmonious and cooperative relationships between the District and its teachers, it is hereby declared to be the purpose of this Article to provide for the speedy settlement of certain differences between the parties through procedures under which grievances may be presented free from coercion, interference, restraint, discrimination or reprisal." Paragraph B of that article pre-

scribes an orderly, four-step grievance procedure culminating in arbitration and declares, in subdivision 1 thereof, that "[f]or the purpose of this Agreement, a grievance shall be defined as, and limited to, *disputes concerning the meaning, interpretation or application of this Agreement*" (emphasis supplied). Thus, contrary to petitioner's contention, the agreement in suit does not require a justiciable case or controversy as a condition precedent to arbitration but, rather, a "dispute" concerning the "meaning, interpretation or application" of the agreement. Here, a "dispute" of the nature referred to in the agreement is clearly present (i.e., whether the newly-promulgated "personnel policy" is violative of paragraph D of article II of the agreement) and, though the question is not free from doubt, it does not appear that any given association member should be required to jeopardize his position by placing himself in violation of the rule in order to render a grievance viable* (see *Matter of Legislature of County of Rensselaer [Allen]*, 44 AD2d 628; *Board of Educ. of Cent. School Dist. No. 1 of Town of Clarkstown v Cracovia*, 36 AD2d 851; see, also, *Curran v Laird*, 420 F2d 122, 124; cf. *Matter of South Colonie Cent. School Dist. v Longo*, 43 NY2d 136). In fact, CPLR 7501 provides, *inter alia*, that: "A written agreement to submit any controversy thereafter arising or any existing controversy to arbitration is enforceable *without regard to the justiciable character of the controversy* and confers jurisdiction on the courts of the state to enforce it and to enter judgment on an award" (emphasis supplied). (To the same effect, see 8 Weinstein-Korn-Miller, NY Civ Prac, par 7501.15.)

Although not unmindful of the general reluctance on the part of *courts* to decide issues in the abstract, we are nevertheless constrained to hold, in the face of the statute, that the presumed absence of a "justiciable" controversy in the instant case cannot be used to bar the *arbitration* of an otherwise bona fide dispute within the meaning of the agreement. We are equally impressed with the observation in *Curran v Laird (supra,* pp 124-125) to the effect that a party may still be aggrieved by a regulation "even though * * * not now or imminently engaged in or proposing activities interdicted [thereby] * * * provided his ability to undertake cogent planning of his present or future operations is [presently] inhibited." While stated in a somewhat different context, i.e., the

---

* We note in passing that the standard incorporated into this regulation is particularly vague and subject to varied interpretations.

vindication of certain statutory rights, the logic underlying this statement is applicable to the case at bar.

■ Turning to a consideration of the second issue, it is petitioner's contention that notwithstanding the "ripeness" of the instant dispute, arbitration must nevertheless be stayed on the ground of public policy, for to read paragraph D of article II of the agreement as respondent would have it read, would constitute an unlawful delegation of petitioner's nondelegable, statutory duties (1) to manage and control the educational affairs of the district (Education Law, § 1709, subd 33), and (2) to employ and retain only qualified teachers, dismissing those tenured teachers who are guilty of "insubordination, immoral character or conduct unbecoming a teacher" and denying tenure to probationary teachers with or without cause at the end of their probationary term (Education Law, § 3012, subd 2; see *Matter of Cohoes City School Dist. v Cohoes Teachers Assn.,* 40 NY2d 774; cf. *Board of Educ. of Great Neck Union Free School Dist. v Areman,* 41 NY2d 527). Accordingly, it is petitioner's position that paragraph D of article II of the agreement concerns matters which are not permissible subjects of negotiation (and therefore arbitration) under the Taylor Law, and thus any provision with reference thereto must be considered unenforceable (see *Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. [United Liverpool Faculty Assn.],* 42 NY2d 509; *Board of Educ. of Great Neck Union Free School Dist. v Areman, supra).* Once again we are compelled to disagree.

While it is true, as petitioner contends (and respondent does not argue to the contrary), that a contract provision restricting its right to deny tenure to a probationary teacher at the end of his term, or to remove tenured teachers for "insubordination, immoral character or conduct unbecoming a teacher" (Education Law, § 3012, subd 2) would be violative of public policy and therefore unenforceable (see *Matter of Cohoes City School Dist. v Cohoes Teachers Assn., supra),* it is, at the same time, by no means clear that a district may not, through collective bargaining, surrender its right to discipline tenured teachers for lesser degrees of "unfavored" conduct, for example, by specifically agreeing that "no lawful religious, political, civic, economic or social activities of any teacher or the lack thereof, shall be grounds for any discipline, discrimination or adverse action against any [such] teacher". The latter need not be construed as intrusive upon the former. In addition, it

can no longer be held in the abstract that every contract provision which in some way infringes upon a board's statutory mandate to manage and control the "educational affairs of the district" (Education Law, § 1709, subd 33) *ipso facto* constitutes an unenforceable delegation of power (see *Matter of Susquehanna Val. Cent. School Dist. at Conklin [Susquehanna Val. Teachers' Assn.],* 37 NY2d 614).

Without passing upon the merits of the instant dispute (as indeed we are prohibited from doing by CPLR 7501), it therefore appears that at least to the extent limited above, paragraph D of article II of the agreement is *not* the result of impermissible negotiations between petitioner and respondent, nor can it be said that the language of the arbitration clause is so narrowly drawn as to exclude this particular dispute from its scope (see *Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. [United Liverpool Faculty Assn.], supra,* pp 513-514).

■ Finally, for a court to order a stay at this stage of the proceedings on the sole ground that the arbitrator's award might conceivably be so broad as to infringe upon petitioner's nondelegable powers, as petitioner suggests, would be inappropriate, for, as the Court of Appeals (per WACHTLER, J.), has just recently observed in *Matter of Port Washington Union Free School Dist. v Port Washington Teachers Assn.* (45 NY2d 411, 417-418):

"The courts may intervene in a dispute which the parties had agreed to arbitrate where the arbitrators could not grant any relief without violating public policy *(Board of Educ. v Areman,* 41 NY2d 527); however that power to intervene is restricted * * *

"[E]ven though the full scope of relief in precisely the form demanded by the teachers association might, if granted *in toto* by the arbitrator, ultimately lead to an award which would be subject to vacatur this consideration does not, standing alone, justify judicial interference with the arbitration process at this stage. The arbitrator's broad power to fashion appropriate relief may therefore not be presumed in advance to necessarily entail public policy conflicts discernible in the abstract by the courts. It follows that where the relief sought is broader than any enforceable remedy that may prospectively be granted but may also be adequately narrowed * * * a stay of arbitration on policy grounds is premature and unjustified."

(Accord *Matter of Mahopac Cent. School Dist. [Mahopac Teachers Assn.],* 65 AD2d 593.)

Although the *Port Washington* case involved a dispute having both procedural and substantive aspects, and the result therein was predicated in part, at least, on the principle that violations of procedural and substantive contract rights can and must be treated discretely (see, also, *Matter of Candor Cent. School Dist. [Candor Teachers Assn.],* 42 NY2d 266), we believe that the rationale underlying that decision is equally applicable in the case at bar, where the scope of the substantive issue presented and the measure of relief demanded can be readily fashioned to eliminate any prospective conflict.

As the arbitration demanded here cannot be said to lead inexorably to the delegation problems urged by the district, the petition to stay arbitration was properly denied (see *Matter of Port Washington Union Free School Dist. v Port Washington Teachers Assn., supra).* Moreover, should the arbitrator's award result in the policy conflicts perceived by the district, resort to the courts will still be available and the review undertaken at that time will not have to rest upon speculation or surmise.

HOPKINS, J. P., LATHAM and O'CONNOR, JJ., concur.

Judgment of the Supreme Court, Nassau County, dated November 28, 1977, affirmed insofar as appealed from, with $50 costs and disbursements.