OPINION OF THE COURT
Frank X. Altimari, J.
The within application requires judicial evaluation of a purported agreement to submit a claim for wrongful death based upon medical malpractice and related claims to a nonjudicial forum.
In Matter of Sprinzen (Nomberg) (46 NY2d 623), the court reaffirmed its approval of submitting disputes to the arbitration forum. It stated (supra, at p 629): "An agreement to submit to arbitration disputes arising out of contract, once condemned by the judiciary of this State as tending to oust the courts of their jurisdiction and, thus, declared void as contrary to settled policy (see Meacham v Jamestown, Franklin & Clearfield R. R. Co., 211 NY 346), is now favorably recognized as an efficacious procedure whereby parties can select their own nonjudicial forum for the 'private and practical’ resolution of their disputes 'with maximum dispatch and at minimum expense.’ (Matter of Siegel [Lewis], 40 NY2d 687, 689, mot for rearg den 41 NY2d 901; see, generally, Siegel, New York Practice, § 586.)”
Generally, arbitration of disputes has arisen in three distinct modes. Parties to a commercial transaction have for many years voluntarily agreed to submit their disputes to arbitration. Public employers and public employees have agreed to submit their controversies to arbitration when statute, decisional law or public policy has not prohibited such resolution (see Matter of Susquehanna Val. Cent. School Dist. at Conklin [Susquehanna Val. Teachers’ Assn.], 37 NY2d 614; Board of Educ. v Areman, 41 NY2d 527; Civil Service Law, art 14). Finally, in some instances arbitration claims have been mandated by statute or rule or regulation (see, e.g., Insurance Law, § 601 et seq.; Labor Law, § 716, subd 2).
However, over the years courts have set aside agreements to arbitrate disputes where overriding public policy considerations expressed by decisional law or statute are present. (See Matter of Sprinzen [Nomberg], supra.) For example, matters involving the State’s antitrust laws are not subject to consensual commercial arbitration. (Matter of Aimcee Wholesale *61 Corp. [Tomar Prods.], 21 NY2d 621.) Claims concerning the liquidation of insolvent insurance companies have been held to be subject to the exclusive jurisdiction of the Supreme Court and not arbitrable. (Matter of Knickerbocker Agency [Holz], 4 NY2d 245.) Recently, a claim arising out of alleged discriminatory conduct in an employment relationship was held not to be arbitrable in New York because a particular remedy was afforded by a Federal statute and a Federal action was pending. (Matter of Wertheim & Co. v Halpert, 48 NY2d 681.)
The court in Wertheim (supra, p 683) stated: "Allowing the petitioner to pursue its claim in arbitration at this time risks chilling the exercise of the statutory right and poses the possibility of inconsistent verdicts in the two proceedings.”
In the instant case, Adelaide O’Keefe, administratrix of the estate of James D. O’Keefe, on behalf of the distributees, has commenced a wrongful death action against the defendants based upon acts of medical malpractice. However, the South Shore Internal Medicine Associates, P. C., Dr. Richard A. Lipton and Dr. Dallas A. Lewis are not parties to the purported arbitration agreement. Only Dr. Milton L. Levine executed the agreement, and it appears that the codefendants were not aware of the agreement.
The agreement provides:

*62

*63 The arena of medical malpractice litigation has received considerable attention in recent years. Governor Wilson and Governor Carey and the respective Legislatures, medical societies and the Bar have struggled together in their attempts to provide a method for the expeditious resolution of medical malpractice litigation (see L 1974, ch 146), and to provide for the availability of malpractice insurance for physicians and hospitals (L 1975, ch 109; L 1976, ch 955).
Nevertheless, is consensual arbitration a viable alternative to the present form of resolving medical malpractice claims? In attempting to answer that question, we must examine many significant practical problems.
For example, in this case, only one defendant, Dr. Levine, is a party to the alleged voluntary agreement. The codefendants are not parties to the agreement. As a result, if the agreement is upheld, then the claim against Dr. Levine will be resolved by arbitration. Plaintiff is not required to submit the claims against Dr. Levine’s codefendants to arbitration. They were not parties to the agreement and cannot compel arbitration. (See Esquire Div. of L. Grief & Bros. [Div. of Genesco] v Finley, 54 AD2d 869.) Thus the claims against Dr. Levine’s codefendants will be resolved in the traditional manner.
Today, there are many medical practice actions which involve multiple defendants. A one plaintiff versus one defendant physician action is the exception rather than the rule. It is doubtful that this court will stay the court action against, the codefendants while the parties to the agreement proceed to arbitration (see Madden v Kaiser Foundation Hosps., 17 Cal 3d 699). Therefore, since there may be two separate proceedings, one in a court and the other in arbitration, will the claim be resolved in an expeditious and inexpensive manner?
Another area of this court’s concern is the scope of disclosure in arbitration. The CPLR and rules of the Appellate Division govern disclosure in court proceedings and provide several means and methods of securing disclosure. In arbitration proceedings the scope and extent of disclosure is subject to the arbitrators’ exercise of discretion, and usually the parties are left to their own devices. If need be, however, a party to arbitration may seek a court order to obtain disclosure, but such remedy is, at the moment, rately utilized (see CPLR 3102, subd [c]). It was stated in Matter of Katz (Burkin) (3 AD2d 238, 239): "It would be generally incompatible with the nature and scope of an arbitration proceeding to allow a *64 shift to the court forum of that part of a proceeding relating to the prehearing examination of witnesses or collection of evidence.” Yet, the appellate courts have noted that the plaintiff in a medical malpractice action is most often less likely than the defendant to have knowledge of proper surgical techniques or procedures, medicines and tests (Cirelli v Victory Mem. Hosp., 45 AD2d 856).
There are other problems inherent in cases where all parties are not bound by the terms of an arbitration agreement. Paramount is the problem of multiple proceedings. That result is wholly inconsistent with the purposes of arbitration. Because of the multiple proceedings, there is a possibility of inconsistent findings, the spectre of collateral estoppel, and issues of Dole v Dow contribution (30 NY2d 143), including third-party practice. These areas of concern create obstacles to the efficacious private and practical resolution of a dispute "with maximum dispatch and at minimum expense.”
The above problems and areas of concern should be addressed by the Legislature during its 1980 session. Patients and providers of health care are entitled to legislative guidelines concerning arbitration of medical malpractice disputes. It is the opinion of this court that medical malpractice claims engender far more significant procedural and substantive issues than commercial disputes or collective bargaining grievances. Effective legislation can resolve these concerns so that patients and providers of health care may voluntarily utilize arbitration as a viable alternative to the judicial forum.
Accordingly, this court respectfully suggests that the Legislature consider a medical malpractice arbitration statute which will govern the arbitration agreements and the administration thereof.
Particular areas of consideration may be whether the arbitration should be voluntary or mandatory, whether the agreement should apply to present claims only or to present and future claims, the text of the agreement, size of type, the number and composition of the panel, the opportunity for each party to revoke the agreement, and the adoption of special discovery rules or incorporation of the rules of discovery pursuant to the CPLR. (See, generally, Insurance LJ, June, 1977, pp 335-365.)
Thus, this court holds that the use of arbitration of disputes growing out of alleged medical malpractice is premature in New York State. Public interest requires that the Legislature *65 act to establish uniform guidelines in this arena to resolve the varied areas of concern which the court has defined. To permit the use of arbitration at this time without such guidelines would foster confusion and create inequities. The consumers of and providers of health and medical care are entitled to know exactly what rights they will be waiving and what their obligations are. This court is of the opinion that the Legislature can resolve the problems so that both patients and providers of health and medical services may utilize arbitration as a viable alternative to the judicial forum.
Based upon the reasons set forth above this court concludes that public interest considerations require that the defendants’ motion to compel arbitration should be and is denied.