CITY OF NEW YORK et al., Respondents, v UNIFORMED FIREFIGHTERS ASSOCIATION, LOCAL 94, IAFF, AFL-CIO, Respondent-Appellant.

First Department, June 8, 1982

### APPEARANCES OF COUNSEL

*John F. Mills* of counsel (*Robert A. Kennedy* and *Vincent F. O'Hara* with him on the brief; *Colleran, O'Hara, Kennedy & Mills, P. C.,* attorneys), for the respondent-appellant.

*Carolyn E. Demarest* of counsel (*Leonard Koerner* with her on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for respondents.

### OPINION OF THE COURT

BLOOM, J.

This controversy flows from an award made by an arbitrator which determined that the assignment of civilians to the performance of inspectional and fire prevention duties would violate the collective agreement subsisting between the Fire Department and the United Firefighters Association, Local 94, IAFF, AFL-CIO (the Union). Special Term granted the city's motion to vacate the arbitrator's award on the ground that it has the responsibility to allocate its resources in the manner it deems most appropriate. We agree with Special Term's conclusion. Accordingly, we affirm.

The issue before us finds origin in the stalemated collective bargaining negotiations of 1968. When the impasse was declared the city's Office of Collective Bargaining took over and designated an arbitrator to investigate and make findings on specific matters in dispute. Among the questions presented was that of "Job Description". The arbitrator ruled that job descriptions were required. However, he also ruled that the formulation of the specific descriptions was within the exclusive purview of the city.

As a result of the arbitrator's award the city provided the job descriptions. They were incorporated into the 1968 collective agreement, and every subsequent agreement, as schedule A of article V. So far as is here pertinent, that schedule provides:

"Job Description — Full Duty Fireman * * *

"2. Fire Prevention Operations.

"Under normal supervision of company officers a Fireman individually or collectively with other firemen, performs inspectional, investigational, educational and regulative duties in the area of fire prevention operations. These activities involve separate procedures and the making of decisions requiring individual judgment but in accordance with prescribed methods and procedures and/or direction of immediate superiors. This shall include but is not limited to —

"a) Inspection of buildings, structures, tunnels, enclosures, vessels, piers, terminals, bridges, carriers, containers — places or premises including fire protective equipment contained therein.

"b) Dissemination of information and education to the public.

"c) Investigation of perilous or fire breeding conditions.

"d) Issuance of summonses, violation orders or referrals to other city agencies as required by law.

"e) Recording and clerical procedures in connection with all of the above items.

"This shall exclude but is not limited to —

"a) Electrical inspections, except for those which create fire breeding potentials.

"b) Alarm Box inspections, except in cases of emergencies affecting fire alarm circuits.

"c) Clerical, other than those specifically related to required duties * * *

"6. Limiting Clause.

"Nothing herein contained is intended to, nor shall it, contravene any law of the State and/or the City of New York or the rules and regulations of the Fire Department of the City of New York."

So long as the fire department has engaged in fire prevention operations these activities have been performed by a mixture of civilian and firefighting personnel. In 1955 the two were divided into separate units. Uniformed firefighters were assigned to district offices. The civilians were assigned to headquarters. Both performed the same duties and frequently worked together on technical operations.

In 1979 the city, confronted with serious financial problems, decided to "civilianize" its fire prevention services. The purpose was twofold: first, it was a cost-efficient method for handling the service; secondly, it would maximize the use of a depleted firefighting force for its primary mission, fighting fires. In June, 1979 the Department of Personnel announced that it would accept applications for the position of Fire Prevention Inspector. This set in motion the train of circumstances which led to the award which is the subject of this proceeding. On January 22, 1980 the Union requested leave of, and was granted leave by, the arbitrator to file an expedited grievance pursuant to the procedure outlined in the collective agreement. The Union filed its request for arbitration on January 25, 1980. The city and the Union stipulated to the issue to be arbitrated. Hearings were held on February 20 and 21, 1980 and on February 25, the arbitrator rendered his award. He held that the assignment of civilians to perform inspectional and fire prevention duties previously performed by firemen would be "in violation of Article V, Schedule A of the collective bargaining agreement and in derogation of the Union's certification and recognition." He

enjoined the fire department and the city from making such assignments.

Thereupon, the city and the fire department moved to set aside and vacate the award. In response the Union sought denial of the city's application and confirmation of the award. Although no formal cross motion to confirm the award was made Special Term treated the Union's papers as a cross motion and denied it. It granted the city's motion to vacate.

The New York City Charter (§ 487, subd a) expressly vests in the Fire Commissioner the sole and exclusive power to govern, discipline, manage, maintain and direct the fire department and the premises and property in its custody. Section 490 (subd a, par [1]) empowers him to inspect or cause inspections to be made for fire hazards "by any officer or *employee* of the department designated for such purpose" (emphasis supplied). The New York City Collective Bargaining Law (Administrative Code of City of New York, ch 54, § 1173-1.0 *et seq.*) provides in pertinent part (§ 1173-4.3, subd b): "It is the right of the city, or any other public employer, acting through its agencies, to determine the standards of services to be offered by its agencies; determine the standards of selection for employment; *direct its employees;* take disciplinary action; relieve its employees from duty because of lack of work or for other legitimate reasons; *maintain the efficiency of governmental operations; determine the methods, means and personnel by which government operations are to be conducted; determine the content of job classifications;* take all necessary actions to carry out its mission in emergencies; and *exercise complete control and discretion over its organization* and the technology of performing its work. *Decisions of the city or any other public employer on those matters are not within the scope of collective bargaining*" (emphasis added).

It is apparent, therefore that the determination by the Fire Commissioner of the personnel by whom inspections for fire hazards are to be made is a managerial function "not within the scope of collective bargaining" (*Honeoye Falls-Lima Cent. School Dist. v Honeoye Falls-Lima Educ. Assn.,* 49 NY2d 732; *Board of Educ. v Areman,* 41 NY2d 527). This was expressly recognized in the arbitrator's

1968 award which, while it directed the city to provide a job description of the duties of a fireman, expressly noted that such job description lay within the exclusive power of the city.

Were this the only issue before us solution would not be so overly complex. The problem is compounded by the fact that when the city announced its intention to "civilianize" the fire prevention service, the Union filed a grievance under the grievance procedure outlined in the collective agreement. The matter was submitted to arbitration. Instead of questioning the jurisdiction of the arbitrator or moving to stay arbitration, the city joined with the Union in formulating the issue to be arbitrated and participated in the arbitration. By consequence, the power of the court to vacate the award is limited to the grounds specified in CPLR 7511 (subd [b]). The only ground here applicable is that contained in CPLR 7511 (subd [b], par 1, cl [iii]) to the effect that the arbitrator, in making the award, exceeded its powers.

The Administrative Code (§ 1173-4.3, subd b) expressly reposes in the city the duty of determining "methods, means and *personnel* by which government operations are to be conducted" (emphasis supplied) and imposes upon it the determination of all job classifications. By adding that these are not matters within the scope of collective bargaining, the statute declares the public policy. And if an award, such as the award in this case, contravenes the statutory mandate it violates public policy and the court is required to set it aside (*Honeoye Falls-Lima Cent. School Dist. v Honeoye Falls-Lima Educ. Assn.*, 49 NY2d 732, *supra; Matter of Cohoes City School Dist. v Cohoes Teachers Assn.*, 40 NY2d 774; *Matter of Exercyle Corp.* [*Maratta*], 9 NY2d 329). Cases like *Matter of Associated Teachers of Huntington v Board of Educ.* (33 NY2d 220), and *Board of Educ. v Associated Teachers of Huntington* (30 NY2d 122) are not to the contrary. In the former the statute relied upon to demonstrate that the sabbatical leave provision of the collective agreement violated public policy was enacted *after* the collective agreement had been entered into, while, in the latter, there was no applicable statute claimed to have been violated by the award. In the case at bar both

the Charter and the Administrative Code provisions long antedated the collective agreement. They were an intrinsic part of the submission to the arbitrator and limited his power. By transgressing into an area forbidden by statute, the award made by him contravened public policy, thus exceeding his powers. Hence, the cases referred to by the Union on the question of waiver have no application.

Accordingly, the judgment of the Supreme Court, New York County (SHAINSWIT, J.), entered January 21, 1981 is affirmed without costs.

SILVERMAN, J. (concurring). I vote to affirm. The New York City Collective Bargaining Law (Administrative Code of City of New York, ch 54, § 1173-1.0 *et seq.*) provides in pertinent part (§ 1173-4.3, subd b): "It is the right of the city, or any other public employer * * * to * * * direct its employees; * * * *determine* the methods, means and *personnel* by which government operations are to be conducted; determine the content of job classifications; * * * and exercise complete control and discretion over its organization and the technology of performing its work. Decisions of the city or any other public employer on those matters are not within the scope of collective bargaining". (Italics supplied.) Thus the statute explicitly provides that the decisions on these matters "are not within the scope of collective bargaining." The presumption that the public employer has power to negotiate with employees as to all terms and conditions of employment has here been "rebutted by showing statutory provisions which expressly prohibit collective bargaining as to a particular term or condition". (*Board of Educ. v Associated Teachers of Huntington,* 30 NY2d 122, 130.) It follows that the matter is not arbitrable. "For arbitration of labor disputes under collective bargaining agreements is part and parcel of the collective bargaining process itself." (*United Steelworkers v Warrior & Gulf Co.,* 363 US 574, 578.) The arbitration here was purportedly pursuant to a collective bargaining agreement. In fact, it is difficult to say from a reading of the collective bargaining agreement that the city ever agreed by that agreement to give up its right to determine that inspection could be performed by civilians as well as uniformed fire officers. A more difficult problem is presented

by the fact that the city expressly submitted this issue to arbitration. But the submission of this issue to arbitration pursuant to a collective bargaining agreement was itself beyond the powers of the city, in view of the statutory prohibition that these issues should not be within the scope of collective bargaining. (*Clifton-Fine Cent. School Bd. of Educ. v Wisner,* 59 AD2d 50, 52.)

I do not believe that the clause that follows the portion of the statute that I have quoted, and to which Justice Asch refers, changes the result. That clause (Administrative Code, § 1173-4.3, subd b) reads: "but, notwithstanding the above, questions concerning the practical impact that decisions on the above matters have on employees, such as questions of workload or manning, are within the scope of collective bargaining." The phrase "concerning the practical impact" relates to such things as "workload or manning", i.e., requiring a lesser number of officers to do the work that the Union contends requires a greater number of officers, e.g., the number of men on a fire apparatus. But the determination that inspection services shall be performed by civilians does not involve such "practical impact" as "questions of workload or manning".

Asch, J. (dissenting). If this tribunal were the New York City Office of Management and Budget, or if the binding precedential law in this State were a *tabula rasa,* I would embrace the determination made by my colleagues. This is not the situation and unless our Court of Appeals decides to the contrary, I must take a position which differs from that of the majority.

Once properly submitted to arbitration, it was for the arbitrator to interpret the disputed contract provision and the court below was not justified in setting aside the arbitrator's interpretation. (*Board of Educ. v Barni,* 49 NY2d 311; *Matter of Board of Educ. [Hess],* 49 NY2d 145.) "[I]t was for the arbitrator's interpretation of the agreement that the parties bargained * * * Needless to say, that a court of law might reach a different result, both in its interpretation * * * and its evaluation * * * is beside the point (see *Lentine v Fundaro,* 29 NY2d 382)". (*Matter of Board of Educ. [Hess], supra,* at p 153.)

In order to vacate an arbitration award under the circumstances present herein, the petitioners must clearly demonstrate that one of three situations occurred, namely (1) that the award is "completely irrational" (*Rochester City School Dist. v Rochester Teachers Assn.*, 41 NY2d 578, 582); or (2) that the agreement limits or is construed to limit the power of the arbitrators and such limitations in the agreement were exceeded by the arbitrator (*Lentine v Fundaro*, 29 NY2d 382); or (3) that the award contravenes a strong public policy (*Matter of Port Jefferson Sta. Teachers Assn. v Brookhaven-Comsewogue Union Free School Dist.*, 45 NY2d 898, 900).

In light of New York City Collective Bargaining Law (Administrative Code, § 1173-4.3, subd b), which expressly permits questions concerning manning to be a subject of collective bargaining, and the city's inclusion of fire prevention duties in schedule A of article V of the collective bargaining agreement, the award of the impartial chairman cannot be said to be "completely irrational".

Nor can it be said that the collective bargaining agreement between the city and the Uniformed Firefighters Association (UFA) "expressly limits" or can be "construed to limit the powers" of the impartial chairman (*Lentine v Fundaro, supra*). The city *stipulated* to the issues presented to the impartial chairman and, therefore, implicitly conceded that it was within his power to resolve such issues. Neither article V nor schedule A of article V of the collective bargaining agreement, limits the power of the impartial chairman to determine the issues. Also the grievance procedure of article XXII, which sets forth the procedure for arbitration, contains nothing that could be construed as limiting the powers of the arbitrator. Article XXV which designates Mr. Schmertz as the Impartial Chairman, does not in any way limit his powers when deciding issues that come before him for arbitration.

The city's principal, indeed only, contention before this court, is that the award was violative of public policy. Where law or strong public policy is violated by the terms of the arbitration award, such award is unenforceable. (*Matter of Sprinzen* [*Nomberg*], 46 NY2d 623, 630; *Board of*

*Educ. v Areman,* 41 NY2d 527; *Garrity v Lyle Stuart, Inc.,* 40 NY2d 354, 356-357.)

The city asserts that the critical distinction between cases in which challenges to arbitration awards based upon public policy violations were rejected by the courts (e.g., *Board of Educ. v Yonkers Federation of Teachers,* 46 NY2d 727; *Matter of Port Jefferson Sta. Teachers Assn. v Brookhaven-Comsewogue Union Free School Dist., supra*), and the case at bar, is the presence here of a violation of clear statutory mandate.

However, the respondents have failed to demonstrate any contravention of statute, constitutional provision or decisional law which would require vacatur of the award on the ground of public policy violation.

Although Impartial Chairman Schmertz stated in his findings and determination of April 8, 1968 that the content of the job description was "an exclusive prerogative of the City", the city subsequently supplied the content of the "Job Description" contained in schedule A of the agreement. This description contained the inspectional and fire prevention duties that were to be performed *by firefighters.* Such duties had traditionally been performed by firefighters and had also been included in the UFA's certification of recognition. Moreover, the city did not, with respect to schedule A, include any specific reservation of management rights. Once the "Job Description" contained in schedule A was negotiated into the collective bargaining agreement without any reservations, the city's right to act unilaterally under the guise of general "management prerogatives" was curtailed (*Matter of Susquehanna Val. Cent. School Dist. at Conklin* [*Susquehanna Val. Teachers Assn.*], 37 NY2d 614).

The statutes (Charter of City of New York, § 487, subd a *et seq.*), and sections of the collective bargaining agreement concerning the city's general managerial rights are not absolute and may be limited, restricted or waived through collective bargaining. The only statute on this point is section 1173-4.3 of the Administrative Code, entitled "Scope of collective bargaining; management rights". Such section provides, in pertinent part: "b. It is the right of the

city, or any other public employer, acting through its agencies, to determine the standards of services to be offered by its agencies; determine the standards of selection for employment; direct its employees; take disciplinary action; relieve its employees from duty because of lack of work or for other legitimate reasons; maintain the efficiency of governmental operations; determine the methods, means and personnel by which government operations are to be conducted; determine the content of job classifications; take all necessary actions to carry out its mission in emergencies; and exercise complete control and discretion over its organization and the technology of performing its work. Decisions of the city or any other public employer on those matters are not within the scope of collective bargaining, *but, notwithstanding the above, questions concerning the practical impact that decisions on the above matters have on employees, such as questions of workload or manning, are within the scope of collective bargaining.*" (Emphasis added.)

Although the opinions which would affirm, cite subdivision b of section 1173-4.3 of the Administrative Code in support of the holding that decisions in these matters are managerial functions "not within the scope of collective bargaining", they both overlook the last clause of this subdivision.

Read *in toto,* therefore, the New York City Administrative Code *specifically permits* collective bargaining on the issue before this court.

There is no violation of a clear statutory mandate as alleged by the city. The statutes cited by the city (*supra*) are not directly contravened by the award of the impartial chairman, and indeed the only statute which directly addresses the issue *specifically provides for collective bargaining on the impact of the city's decision regarding fire protection duties.* (Administrative Code, § 1173-4.3, subd b.)

Through the process of collective bargaining, a public employer may voluntarily negotiate all matters in controversy unless plainly and clearly prohibited either by statute, by controlling decisional law or by public policy. (*Board of Educ. v Nyquist,* 48 NY2d 97.)

The Court of Appeals has explicitly cautioned lower courts to "exercise due restraint" in overturning arbitration awards based on claims of "public policy" because the public policy of the State of New York clearly supports the use of the arbitration process. (See *Matter of Abramovich v Board of Educ.*, 46 NY2d 450.) "Thus, there are now but a few matters of concern which have been recognized as so intertwined with overriding public policy considerations as to either place them beyond the bounds of the arbitration process itself or mandate the vacatur of awards which do violence to the principles upon which such matters rest * * * Stated another way, the courts must be able to examine an arbitration agreement or an award on its face, without engaging in extended factfinding or legal analysis, and conclude that public policy precludes its enforcement. This is so because, as has been previously noted, an arbitrator is free to apply his own sense of law and equity to the facts as he has found them to be in resolving a controversy." (*Matter of Sprinzen [Nomberg], supra,* at pp 630-631.)

Applying these principles, it is clear that the award of Impartial Chairman Schmertz does not violate public policy and that the city waived its statutory managerial rights through collective bargaining agreements.

Accordingly, the judgment of the Supreme Court, New York County (SHAINSWIT, J., upon a decision of SUTTON, J., dated December 3, 1980), entered January 21, 1981, which granted the application of the petitioners-respondents, City of New York and the Fire Department of the City of New York to vacate an arbitration award and denied the cross motion of the respondent-appellant Uniformed Firefighters Association to confirm the award should be reversed, and petitioners-respondents' application denied and the respondent-appellant's cross motion for confirmation of the arbitration award granted.

ROSS, J. P., concurs with BLOOM, J.; SILVERMAN, J., concurs in an opinion and in the opinion of BLOOM, J.; MARKEWICH and ASCH, JJ., dissent in an opinion by ASCH, J.

Judgment, Supreme Court, New York County, entered on January 21, 1981, affirmed, without costs and without disbursements.